ATTORNEY FOR APPELLANT
Gregory Bowes
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE
Gregory F. Zoeller
Attorney General of Indiana

Ian McLean
Michael Gene Worden
Deputy Attorneys General
Indianapolis, Indiana



In the
Indiana Supreme Court

No. 38S05-1206-CR-345

TINA WHITING,

*Appellant (Defendant below)*,

v.

STATE OF INDIANA,

*Appellee (Plaintiff below)*.

Appeal from the Jay Circuit Court, No. 38C01-0809-MR-1
The Honorable Brian D. Hutchison, Judge

On Petition to Transfer from the Indiana Court of Appeals, No. 38A05-1008-CR-505

**June 19, 2012**

**Sullivan, Justice.**

During voir dire, a prospective juror stated that she could not be fair because she knew the defendant, the defendant's grandmother, the victim's family, and the attorneys. The trial judge denied a joint challenge for cause. The defendant did not strike the juror with any of her available peremptory challenges, and the juror served on the jury. We hold that the defendant's claim of error regarding the denial of the challenge for cause is procedurally defaulted, and thus

unavailable for review, because she failed to exhaust her peremptory challenges. We also hold that her claim is not reviewable for fundamental error.

## Background

On the night of Sunday, September 7, 2008, the defendant, Tina Whiting, along with Addison Pijnapples and her husband Thomas Smith, Roderick Berry, and Michael Heffern, hatched a plan to rob Shawn Buckner of his prescription narcotics. In pursuit of the plan, Whiting and Pijnapples successfully lured Buckner to Whiting's apartment with promises of a three-way sex act. When Whiting took Buckner to her bedroom, Pijnapples gave a predetermined signal, prompting the three men to come out of hiding and enter Whiting's bedroom, where their attack on Buckner commenced. After punching and kicking Buckner to the point that he was barely moving, the assailants began searching him for drugs, as Whiting yelled, "he's got pills[,] I know he's got pills!" Trial Tr. 52-53. At some point, one of the men "requested a knife so they could finish this"; Whiting retrieved a large knife from her bedroom, but the men declined it. Id. at 469, 471; State's Ex. 87. Although there were no drugs, Smith found twenty dollars in Buckner's sock and told Pijnapples to go buy beer. The group then agreed that the men would drive Buckner, who was still alive, to a bar and leave him in an alley.

Whiting and Pijnapples drove to Ohio to purchase beer and, while en route, discarded several items of Buckner's personal property. Meanwhile, the men began driving, but instead of going to a bar, they drove to a secluded cornfield where they stabbed Buckner in the torso twenty times and nearly severed his penis, using a small knife Smith had taken from Whiting's apartment. Smith then delivered a fatal blow by cutting Buckner's throat to his spine, severing the major blood vessels in his neck. They left the body in the cornfield and returned to the apartment and began cleaning. Whiting and Pijnapples returned to the apartment a few minutes later and joined in the cleaning effort, during which they all drank the beer that had been purchased with Buckner's money. A few days later, Smith, Berry, and Pijnapples moved Buckner's body to a shallow grave they had dug, and to mislead investigators further, Whiting taped a note to Buckner's apartment door expressing feigned concern for his well-being. On September 10, the police discovered Buckner's body.

2

Whiting and her cohorts were each charged in Jay Circuit Court with murder and robbery.[1] Whiting and Pijnapples were tried jointly.[2] On July 12, 2010, Whiting's and Pijnapples's four-day trial commenced with a full day of jury selection. During voir dire, eventual juror Cynthia Wright explained at a sidebar conference that she had served for many years as a secretary at a local church and in that capacity had become acquainted with Whiting and her grandmother (who had raised Whiting), Pijnapples, Buckner's family, and all of the attorneys.[3] In light of this, Juror Wright "stated that she would feel very uncomfortable making a decision that was so important to everyone involved." Appellant's App. 225; Appellant's Supp. App. 2. Immediately following sidebar, the prosecutor asked Juror Wright if she thought she could provide a fair trial, to which she replied "No I can not." Voir Dire Tr. 128. Neither Whiting's nor Pijnapples's defense counsel asked Juror Wright any questions about her ability to remain impartial and instead asked only generalized questions about witness credibility and the State's burden of proof. The State moved to strike Juror Wright and two others on the panel for cause; Whiting joined the State's motion. The trial judge dismissed the two others but denied the motion to excuse Juror Wright for cause. At that point, the defense had six peremptory challenges remaining and the State had eight; neither party exercised a peremptory strike to remove Juror Wright, and she was later empaneled and sworn as a regular juror.

---

[1] Whiting's and the others' motions for a change of judge were denied, and those decisions were affirmed. Smith v. State, No. 38A05-0812-CR-720, 2009 WL 2611367 (Ind. Ct. App. Aug. 26, 2009).

[2] Berry and Smith pled guilty and Heffern was convicted by a jury shortly before Whiting's trial. Smith v. State, No. 38A04-1008-CR-478, 2011 WL 2277150 (June 8, 2011), vacated in part on reh'g, 2011 WL 3861425 (Ind. Ct. App. Sept. 1, 2011), trans. denied; Heffern v. State, No. 38A05-1007-CR-462, 2011 WL 1565999 (Ind. Ct. App. Apr. 26, 2011), trans. denied; Trial Tr. 24-25.

[3] This sidebar conference was not transcribed, so Whiting's appellate counsel filed a Motion to Certify a Statement of the Evidence under Indiana Appellate Rule 31, along with a Verified Statement of the Evidence from Whiting's trial counsel. The trial court subsequently issued an order in which it certified some of trial counsel's statements but declined to certify others, and only this order constitutes part of the record. See Ind. Appellate Rule 31(C). Whiting argues that Appellate Rule 31(D) requires us to consider both trial counsel's verified statement and the trial court's certification. But Rule 31(D) does not apply here because the issue is not what the trial judge said or did but what Juror Wright and counsel said or did. To accept Whiting's position that Rule 31(D) applies any time "a party's assertion of the missing evidence differs from the trial court's," Appellant's Reply Br. 3, would negate the certification requirement of Rule 31(C). Cf. Morse v. State, 413 N.E.2d 885, 886 (Ind. 1980) ("This Court will not determine what occurred at trial based on statements contained in a motion." (citations omitted)). Here, only the evidence certified by the trial court is part of the record.

Whiting and Pijnapples were each convicted of one count of felony murder, Ind. Code § 35-42-1-1(2) (2008), and one count of Class A felony robbery resulting in serious bodily injury, id. § 35-42-5-1. After merging the robbery convictions with the felony murder convictions, the trial court sentenced Whiting and Pijnapples each to 55 years' imprisonment.

On appeal,[4] Whiting raised four issues, all of which were rejected by the Court of Appeals. Whiting v. State, No. 38A05-1008-CR-505, 2011 WL 2601426 (Ind. Ct. App. June 30, 2011). First, the court held that Whiting had waived her claim that the trial court erred in denying the challenge for cause because she had not exhausted her peremptory challenges. Id. at *3-4. Second, it held that certain testimony was not impermissible vouching and that, in any event, the issue had been waived. Id. at *5. Third, it held that there was sufficient evidence to support Whiting's conviction. Id. at *6-8. Lastly, the court affirmed her sentence. Id. at *8-10.

Whiting sought transfer, and we heard oral argument on December 15, 2011. We now grant transfer, thereby vacating the decision of the Court of Appeals, Ind. Appellate Rule 58(A), but we address only the juror-bias claim. We summarily affirm the decision of the Court of Appeals in all other respects. App. R. 58(A)(2).

## Discussion

This case tests the limits of State procedural-default rules when the defaulted claim is one of juror bias. The right to a fair trial before an impartial jury is a cornerstone of our criminal justice system. Caruthers v. State, 926 N.E.2d 1016, 1020 (Ind. 2010); see U.S. Const. amend. VI[5]; Ind. Const. art. I, § 13. In substance, it requires that a criminal defendant be given "a fair trial by

---

[4] This appeal concerns only Whiting. In a separate appeal, the Court of Appeals affirmed Pijnapples's conviction against a sufficiency-of-the-evidence challenge. Pijnapples v. State, No. 38A05-1008-CR-510, 2011 WL 4104853 (Ind. Ct. App. Sept. 15, 2011), trans. denied. But the court remanded the case to the trial court so that it could correct the abstract of judgment to reflect that Pijnapples had been convicted of felony murder instead of intentional murder. Id. at *2 n.2. The abstract of judgment for Whiting's conviction contains the same error. We thus remand the case so that the trial court can correct the abstract of judgment to reflect judgment of conviction for felony murder under Indiana Code section 35-42-1-1(2).
[5] The Sixth Amendment is applicable to the states through the Due Process Clause of the Fourteenth Amendment. Duncan v. Louisiana, 391 U.S. 145, 149 (1968). Additionally, the Due Process Clause independently requires jury impartiality. E.g., Morgan v. Illinois, 504 U.S. 719, 726-28 (1992).

4

a panel of impartial, 'indifferent' jurors." Irvin v. Dowd, 366 U.S. 717, 722 (1961). Jurors need not be totally ignorant of the facts or issues involved in a case; rather, a constitutionally impartial juror is one who is able and willing to lay aside his or her prior knowledge and opinions, follow the law as instructed by the trial judge, and render a verdict based solely on the evidence presented in court. Id. at 722-23; accord Skilling v. United States, 130 S. Ct. 2896, 2912-13 (2010); Murphy v. Florida, 421 U.S. 794, 799-800 & n.4 (1975); Turner v. Louisiana, 379 U.S. 466, 471-73 (1965). The presence of even one biased juror on the jury is a structural error requiring a new trial. E.g., United States v. Martinez-Salazar, 528 U.S. 304, 316 (2000).

To secure an impartial jury, the Sixth Amendment requires that the venire be drawn from a fair cross-section of the community, e.g., Holland v. Illinois, 493 U.S. 474, 480 (1990); that the defendant be given an adequate opportunity to examine prospective jurors on voir dire, e.g., Morgan v. Illinois, 504 U.S. 719, 729-30, 733-34 (1992); and that biased jurors be removed for cause, e.g., Dennis v. United States, 339 U.S. 162, 171-72 (1950). In addition, state law provides defendants with a limited number of peremptory challenges, I.C. § 35-37-1-3; Ind. Jury Rule 18, which they may use to excuse jurors for almost any reason, e.g., Swain v. Alabama, 380 U.S. 202, 220 (1965), overruled in part, Batson v. Kentucky, 476 U.S. 79, 90-98 (1986). Although peremptory challenges are not constitutionally mandated, e.g., Rivera v. Illinois, 129 S. Ct. 1446, 1453-54 (2009), they are an important auxiliary tool used to empanel an impartial jury, e.g., Martinez-Salazar, 528 U.S. at 311, 316; Holland, 493 U.S. at 481, 484.

Challenges for cause are the primary means by which biased jurors are struck. There are no limits on the number of for-cause challenges but each "must be supported by specified causes or reasons that demonstrate that, as a matter of law, the venire member is not qualified to serve." Gray v. Mississippi, 481 U.S. 648, 652 n.3 (1987) (citation omitted). Along with the constitutional requirement that biased jurors be struck, state law provides additional grounds for challenging jurors for cause. I.C. § 35-37-1-5; J.R. 17; cf. Byers v. State, 709 N.E.2d 1024, 1026 n.1 (Ind. 1999) (statutory list not exhaustive).

"Impartiality is not a technical conception. It is a state of mind. For the ascertainment of this mental attitude of appropriate indifference, the Constitution lays down no particular tests and

procedure is not chained to any ancient and artificial formula." United States v. Wood, 299 U.S. 123, 145-46 (1936). It follows that the trial court has "a broad discretion and duty . . . to see that the jury as finally selected is subject to no solid basis of objection on the score of impartiality." Frazier v. United States, 335 U.S. 497, 511 (1948). Accordingly, the trial judge has the inherent authority and responsibility to dismiss biased jurors for cause, either sua sponte or upon counsel's motion, and is afforded broad discretion in making these decisions; and on appeal, we afford substantial deference to the trial judge's decision respecting a challenge for cause and will find error only if the decision is illogical or arbitrary. E.g., Ward v. State, 908 N.E.2d 595, 597 (Ind. 2009); Woolston v. State, 453 N.E.2d 965, 967 (Ind. 1983); cf. Skilling, 130 S. Ct. at 2918, 2923 ("manifest error"); Reynolds v. United States, 98 U.S. 145, 156 (1878) (same).

Whiting contends that the trial judge erred by not excusing Juror Wright for cause and, as a result, that she was denied her right to a fair trial before an impartial jury. The State counters that this claim is procedurally defaulted, and thus unavailable for review, because Whiting chose not to remove Juror Wright with one of her peremptory strikes. In response, Whiting acknowledges failing to exhaust her peremptory challenges but claims that the so-called "exhaustion rule" should not apply in criminal trials; alternatively, she claims that Juror Wright's service on the jury constituted fundamental error, thereby excusing any procedural default.

**I**

Indiana law is well settled. To preserve for appeal a claim that the trial judge erred in denying a challenge for cause, the defendant must demonstrate that he or she either used a peremptory challenge to remove the challenged juror or had already exhausted his or her allotment of peremptories.[6] E.g., Merritt v. Evansville-Vanderburgh Sch. Corp., 765 N.E.2d 1232, 1235 (Ind. 2002); Robinson v. State, 453 N.E.2d 280, 282 (Ind. 1983); Monserrate v. State, 265 Ind. 153, 157, 352 N.E.2d 721, 723 (1976). It is not sufficient that peremptories are eventually exhausted if such challenges were available when the for-cause challenge was denied but the juror was not struck. E.g., Merritt, 765 N.E.2d at 1235.

---

[6] The rule applies in both civil and criminal cases, so it may not always be a defendant seeking to challenge a trial court's denial of a for-cause challenge. See, e.g., Merritt, 765 N.E.2d at 1234, 1237-38.

6

An appellate court will review a trial court's denial of a challenge for cause <u>only</u> if the defendant complies with the exhaustion rule. <u>E.g.</u>, <u>id.</u> at 1235; <u>Sutton v. State</u>, 237 Ind. 305, 307, 145 N.E.2d 425, 426 (1957) (per curiam). But, even where a defendant preserves a claim by striking the challenged juror peremptorily, reversible error occurs only where the defendant eventually exhausts all peremptories <u>and</u> is forced to accept either an incompetent or an objectionable juror.[7] <u>E.g.</u>, <u>Merritt</u>, 765 N.E.2d at 1235, 1237.

It is undisputed that Whiting failed to comply with the exhaustion rule. She was given ten peremptory challenges to select regular jurors, I.C. § 35-37-1-3(b); J.R. 18(a)(2), and an additional one to select the alternate jurors, J.R. 18(c)(1), though she was required to use them collectively with Pijnapples, I.C. § 35-37-1-3(d); J.R. 18(a). When the motion to remove Juror Wright for cause was denied, the trial judge informed the defense that it had six peremptory challenges remaining, and Whiting chose not to strike Juror Wright peremptorily. Moreover, the defense used only nine of its ten peremptory challenges in selecting the regular jury. Whiting has therefore forfeited any claim that the trial judge erred in not removing Juror Wright for cause.

**A**

The exhaustion rule is sound policy. In <u>Merritt</u>, Chief Justice Shepard, writing for a unanimous Court, explained that permitting litigants "to seek a new trial when they had a remedial tool available and chose not to use it could lead to harsh results." 765 N.E.2d at 1236. These results include significant costs and inefficiencies for the parties, the court, and the citizen jurors who will have served for nothing. <u>Id.</u> at 1237. It also may compromise the ability of the subsequent jury to serve its purpose – "to decide the factual question of the defendant's guilt or innocence," <u>Delaware v. Van Arsdall</u>, 475 U.S. 673, 681 (1986) (citation omitted) – because, by the time the defendant's new trial begins, witnesses may have died or moved, memories may have faded, and other evidence may have been lost. Furthermore, empaneling a second jury may be more difficult, particularly in a small community, because any pretrial publicity will

---

[7] An "incompetent" juror is one who is removable for cause, while an "objectionable" juror is one who is not removable for cause but whom the party wishes to strike. <u>Id.</u> at 1234 n.1.

invariably highlight the prejudicial fact that the defendant has once been convicted. Cf. Irvin, 366 U.S. at 725-27; Ward v. State, 810 N.E.2d 1042 (Ind. 2004). These issues are compounded when the number of jury trials conducted annually is taken into account. See Indiana Judicial Service Report: 2010, at 13 (2011) (1,510 jury trials in 2010).

It is true that these costs are incurred any time an appellate court sets aside a jury verdict and remands for a new trial. But, unlike with other types of error, litigants in this context have been provided with a means to cure the alleged error at the outset. It seems "eminently fair and more sensible" to require parties to use their available peremptory challenges curatively than to impose these significant, preventable costs and inefficiencies on the justice system and the public. Merritt, 765 N.E.2d at 1237; cf. United States v. Boyd, 86 F.3d 719, 722 (7th Cir. 1996) (Easterbrook, J.) (defendant cannot "plant an error and grow a risk-free trial"). This is particularly so given that one of the principal purposes of the defendant's peremptories is to aid the government in empaneling an impartial jury. E.g., Edmonson v. Leesville Concrete Co., 500 U.S. 614, 620 (1991).

An additional policy reason supports the exhaustion rule. "Reviewing courts are properly resistant to second-guessing the trial judge's estimation of a juror's impartiality, for that judge's appraisal is ordinarily influenced by a host of factors impossible to capture fully in the record – among them, the prospective juror's inflection, sincerity, demeanor, candor, body language, and apprehension of duty." Skilling, 130 S. Ct. at 2918 (citing Reynolds, 98 U.S. at 156-57). Clearly, "the in-the-moment voir dire affords the trial court a more intimate and immediate basis for assessing a venire member's fitness for jury service." Id. Like the trial judge, the parties are privy to such nonrecord factors. If the trial court refuses to remove the juror for cause and the defendant chooses not to remove the juror peremptorily, then there is a fairly strong indication that the parties who viewed the whole picture did not consider the juror sufficiently biased to warrant removal. Cf. Holland, 493 U.S. at 484 ("Peremptory challenges, by enabling each side to exclude those jurors it believes will be most partial toward the other side, are a means of 'eliminat[ing] extremes of partiality on both sides,' thereby 'assuring the selection of a qualified and unbiased jury.'" (first emphasis added) (citations omitted)). It is therefore difficult for an appellate court to justify holding otherwise on the basis of the cold record, which presents only a

small part of the whole picture. Cf. Skilling, 130 S. Ct. at 2924 n.32 (noting that juror was not so biased as to warrant peremptory challenge by defense counsel); United States ex rel. Darcy v. Handy, 351 U.S. 454, 463 (1956) ("The failure of petitioner's counsel to exhaust the means provided to prevent the drawing of an unfair trial jury from a community allegedly infected with hysteria and prejudice against petitioner, while not dispositive, is significant." (citation omitted)). But cf. Thompson v. Altheimer & Gray, 248 F.3d 621, 622-23 (7th Cir. 2001) (Posner, J.) (explaining that "[b]ias is only one factor in deciding whether to challenge a juror" and, thus, it "doesn't follow" that a litigant's failure to strike a juror peremptorily necessarily means that he or she "can't really think that [the juror] was biased" (emphasis in original)).

**B**

Much of Whiting's argument to avoid the exhaustion rule is premised on her contention that a claim of structural error cannot be procedurally defaulted. But the Supreme Court observed long ago, "No procedural principle is more familiar to this Court than that a constitutional right may be forfeited in criminal as well as civil cases by the failure to make timely assertion of the right before a tribunal having jurisdiction to determine it." Yakus v. United States, 321 U.S. 414, 444 (1944) (citations omitted). For this reason, courts may "refuse to consider a constitutional objection even though a like objection had previously been sustained in a case in which it was properly taken." Id. (citation omitted). The policies justifying proper preservation of non-structural claims apply with equal force to structural claims. E.g., Freytag v. Commissioner, 501 U.S. 868, 894-901 (1991) (Scalia, J., concurring in part and concurring in judgment). Thus, almost any claim, structural or not, can be forfeited through procedural default.[8] E.g., Peretz v. United States, 501 U.S. 923, 936-37 (1991); Freytag, 501 U.S. at 892-901; Wainwright v. Sykes, 433 U.S. 72, 84-85, 90-91 (1977).

More to the point here, in Ross v. Oklahoma, 487 U.S. 81 (1988), the Supreme Court rejected a constitutional challenge to Oklahoma's exhaustion rule, which is more stringent than Indiana's, Merritt, 765 N.E.2d at 1236. In Ross, the trial judge had erroneously denied a chal-

---

[8] The main exception is a claim that the court lacks subject-matter jurisdiction, which can be raised at any point during the proceeding and by the court sua sponte. Freytag, 501 U.S. at 896-97.

lenge for cause, and the petitioner, complying with Oklahoma's exhaustion rule, had removed the juror with a peremptory challenge. The Court rejected the petitioner's arguments that Oklahoma's exhaustion rule violated his rights to an impartial jury and due process by requiring him to use a peremptory challenge curatively. Ross, 487 U.S. at 83-91. Rejecting the due process argument, the Court observed that "there is nothing arbitrary or irrational about [an exhaustion] requirement, which subordinates the absolute freedom to use a peremptory challenge as one wishes to the goal of empaneling an impartial jury." Id. at 90. Ross differs from the present case in that the defendant there did strike the challenged juror with a peremptory challenge. But, in discussing the defendant's Sixth Amendment claim, the Court noted that "[h]ad [the juror] sat on the jury that ultimately sentenced petitioner to death, and had petitioner properly preserved his right to challenge the trial court's failure to remove [the juror] for cause, the sentence would have to be overturned." Id. at 85 (emphasis added) (citation omitted). Thus, the Court approved Oklahoma's rule with the understanding that a defendant's failure to comply would result in procedural default.[9]

Whiting also claims that applying the exhaustion rule in criminal cases is "too harsh," particularly when there are multiple defendants. But it is difficult to see the harshness in requiring a defendant to use a peremptory challenge in accordance with one of the traditional reasons for its existence. See, e.g., Martinez-Salazar, 528 U.S. at 319 (Scalia, J., concurring in judgment) ("The resolution of juror-bias questions is never clear cut, and it may well be regarded as one of the very purposes of peremptory challenges to enable the defendant to correct judicial error on the point. Indeed, that must have been one of their purposes in earlier years, when there was no appeal from a criminal conviction – so that if the defendant did not correct the error by using one of his peremptories, the error would not be corrected at all." (emphasis in original) (internal citation omitted)). On the contrary, the exhaustion rule arguably is more protective of the defendant's right to an impartial jury because it requires counsel to strike a juror who it believes should

---

[9] In Martinez-Salazar, the Court declined to read an exhaustion requirement into Federal Rule of Criminal Procedure 24(b) and concluded, in dictum, that a defendant could either use a peremptory curatively or appeal on Sixth Amendment grounds, 528 U.S. at 307, but that conclusion has no effect on state procedure. Moreover, concurring in the judgment, Justices Scalia and Kennedy disagreed with the majority's dictum and would apply ordinary principles of waiver. Id. at 318-19 (Scalia, J.); cf. Thompson, 248 F.3d at 623 (criticizing Martinez-Salazar dictum "as putting the litigant in a heads-I-win-tails-you-lose position: if he wins a jury verdict, he can pocket his victory, and if he loses, he can get a new trial").

have been struck for cause rather than allowing the juror to serve and gambling that a conviction will be set aside on appeal under a highly deferential standard of review.

Moreover, we see no difference between the right to jury impartiality in civil and criminal trials – impartiality is a basic principle of due process, whether it is life, liberty, or property that is at stake. See, e.g., McDonough Power Equip., Inc. v. Greenwood, 464 U.S. 548, 554 (1984) (considering juror impartiality in civil case); Thompson, 248 F.3d at 624 ("Martinez-Salazar was a criminal case, but we cannot think of any difference which that would make."). We also fail to perceive any harshness in applying the rule where multiple defendants are required to exercise peremptory challenges collectively. In point of fact, the exhaustion rule should be more readily satisfied when multiple defendants are drawing from the same stock of peremptory challenges. It is also worth noting that Indiana has required exhaustion of peremptory challenges in criminal trials for well over 100 years. E.g., Voght v. State, 145 Ind. 12, 19, 43 N.E. 1049, 1052 (1896).[10]

## C

In sum, Whiting's claim of error regarding the trial court's refusal to dismiss Juror Wright for cause is procedurally defaulted. We continue to adhere to the exhaustion rule in both civil and criminal cases because of the sound policy supporting it. And Whiting's challenges to its soundness and validity in criminal cases do not withstand scrutiny.

## II

Whiting seeks to escape procedural default by invoking our fundamental-error doctrine. Her argument that we should review her procedurally defaulted claim for fundamental error has some persuasive force. After all, "[a] fair trial in a fair tribunal is a basic requirement of due

---

[10] Whiting's final contention that the exhaustion rule renders appellate review illusory is undercut by the fact that this Court periodically reviews properly preserved claims of this nature. E.g., Ward, 908 N.E.2d at 596-98; McHenry v. State, 820 N.E.2d 124, 127 (Ind. 2005); Campbell v. State, 547 N.E.2d 843, 843-44 (Ind. 1989). Furthermore, that a preserved error is reversible only if the defendant shows that at least an objectionable juror served simply acknowledges that a criminal defendant is entitled to a fair trial, not a perfect one. E.g., Ross, 487 U.S. at 91; Van Arsdall, 475 U.S. at 681.

process." In re Murchison, 349 U.S. 133, 136 (1955). That said, our examination of the case law reveals no cases in which we have applied the fundamental-error doctrine to excuse procedural default under the exhaustion rule, and it appears that neither this Court nor the Court of Appeals has even considered applying the fundamental-error exception in this context.[11]

It is not surprising that there is no precedent in this regard. When default occurs under the exhaustion rule, the defendant has objected to a juror and the trial judge has rendered a decision based on counsel's arguments and what the judge has observed during voir dire. This circumstance is inconsistent with the underlying premise of fundamental-error review because, at bottom, the fundamental-error doctrine asks whether the error was so egregious and abhorrent to fundamental due process that the trial judge should or should not have acted, irrespective of the parties' failure to object or otherwise preserve the error for appeal. A finding of fundamental error essentially means that the trial judge erred either by not acting when he or she should have, see, e.g., Addison v. State, 962 N.E.2d 1202, 1216-17 (Ind. 2012) (finding fundamental error where, among other things, trial court failed to perform its duty under the third step of Batson), or by acting in a manner that grossly exceeded the role of an impartial judge, see, e.g., Kennedy v. State, 258 Ind. 211, 217-18, 280 N.E.2d 611, 615 (1972) (remanding for a new trial where trial judge assumed role of adversary and vigorously impeached defendant's expert in front of jury). Here, the claim is not that the trial judge failed to act even though not being asked to do so but that he made the wrong decision after being asked to act.[12] And there is no basis in the record for claiming that the judge acted in a grossly prejudicial manner when he denied the challenge.

Moreover, applying the fundamental-error exception in this context would both weaken the exhaustion rule and utilize fundamental error not as a "narrow exception" but as the general rule. This provides no incentive for counsel to exercise peremptory challenges curatively and

---

[11] Whiting cites Riggs v. State, 809 N.E.2d 322 (Ind. 2004), to support the proposition that "[j]uror impartiality challenges have been reviewed under the fundamental error doctrine." Pet. to Transfer 6. But the issue in Riggs concerned whether the trial court had abused its discretion in replacing a juror with an alternate after deliberations had begun. We held that the record did not support the trial court's decision and thus reversed and remanded for a new trial. Id. at 323, 329. Notably, defense counsel had objected to the trial court's action, id. at 325, so the case was not one concerning fundamental error.

[12] Thus, Whiting's claim that her default is excusable because the judge was on notice misses the mark.

would drastically upset the careful balance drawn by the exhaustion rule. The exception would swallow the rule.

Finally, not reviewing for fundamental error in this context does not necessarily end the matter. Whiting and other similarly situated defendants may seek relief through a claim of ineffective assistance of trial counsel under the well-established standard of Strickland v. Washington, 466 U.S. 668 (1984). "Effective trial counsel preserves claims to be considered on appeal and in federal habeas proceedings." Martinez v. Ryan, 132 S. Ct. 1309, 1317-18 (2012) (citations omitted). Thus, a colorable claim can be made that a lawyer's decision not to preserve the issue for appeal by using a peremptory strike to remove the challenged juror constitutes ineffective assistance of counsel if the juror was actually biased, provided, of course, that counsel had no valid strategic reason for declining to exercise the peremptory.

Although fundamental-error and ineffective-assistance-of-counsel claims are different, they often yield the same result. McCorker v. State, 797 N.E.2d 257, 262-63 & n.5 (Ind. 2003). In this context, it is sensible to require the defendant to bring the claim as one of ineffective assistance of trial counsel because it provides the incentive to exhaust peremptory challenges that is lacking under the fundamental-error doctrine.

## Conclusion

In sum, we hold that Whiting's juror-bias claim is procedurally defaulted because she failed to exhaust her peremptory challenges. We also hold that a procedural default under the exhaustion rule is not amenable to fundamental-error review. Accordingly, we affirm Whiting's conviction for felony murder and summarily affirm her sentence. We remand to the trial court so that it can correct the abstract of judgment to reflect that Whiting was convicted of felony murder under Indiana Code section 35-42-1-1(2).

Dickson, C.J., and Rucker, David, and Massa, JJ., concur.