**Pursuant to Ind. Appellate Rule 65(D),
this Memorandum Decision shall not
be regarded as precedent or cited
before any court except for the
purpose of establishing the defense of
res judicata, collateral estoppel, or the
law of the case.**



ATTORNEY FOR APPELLANT:

**SUZY ST. JOHN**
Marion County Public Defender Agency
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE:

**GREGORY F. ZOELLER**
Attorney General of Indiana

**IAN MCLEAN**
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| JENNIFER BARBER, ) | |
| ) | |
| Appellant-Defendant, ) | |
| ) | |
| vs. ) | No. 49A04-1208-CR-395 |
| ) | |
| STATE OF INDIANA, ) | |
| ) | |
| Appellee-Plaintiff. ) | |

APPEAL FROM THE MARION SUPERIOR COURT
The Honorable Patrick Murphy, Judge Pro Tem
Cause No. 49F08-0810-CM-235749

**September 18, 2013**

**MEMORANDUM DECISION - NOT FOR PUBLICATION**

**ROBB, Chief Judge**

## Case Summary and Issue

Jennifer Barber appeals her convictions for operating a vehicle while intoxicated, a Class A misdemeanor, and failure to stop and remain at the scene of an accident, a Class C misdemeanor. Barber raises the following issue for our review: whether the trial court's denial of Barber's request to strike two jurors for cause during voir dire was reversible error. Concluding that Barber failed to exhaust her peremptory challenges and thereby properly preserve her claim for appeal, we affirm.

## Facts and Procedural History

On the evening of October 15, 2008, Barber, who was intoxicated, attempted to drive home after an evening of playing billiards and drinking at the American Legion. Barber perpetrated a hit-and-run but was found with her car in a ditch a short distance from the original accident. Barber was arrested and charged with operating a vehicle while intoxicated, public intoxication, and failure to stop and remain at the scene of an accident. The State moved to dismiss the charge of public intoxication, and a jury trial was held on July 23, 2012.[1]

During voir dire of the first panel of fourteen prospective jurors, two of those prospective jurors, Sloan and Massey, indicated that they may not be able to be fair and impartial. Several relevant exchanges involving Sloan and Massey took place, beginning with one between the State and Sloan:

> [State]: [I]n your questionnaire I notice that you checked a – because, like I said, the main thing is being fair and impartial. You checked that you didn't think you could be fair and impartial. Is that still your position?

---

[1] A previous bench trial was held on December 15, 2008, after which Barber was found guilty. However, this court reversed Barber's convictions and remanded for a new trial on the grounds that the trial court abused its discretion in denying Barber's motion to continue. See Barber v. State, 911 N.E.2d 641, 647 (Ind. Ct. App. 2009).

[Sloan]: Yes.

[State]: Okay. Can you explain that a little bit?

[Sloan]: Well, I mean, if you get arrested, there is a reasoning behind getting arrested.

[State]: Okay. So you automatically – if a person is arrested, you think that they have done something or there's just no way that they would have been arrested?

[Sloan]: Yes.

[State]: That's your position?

[Sloan]: Yes.

[State]: Fair enough. And nothing you – that will – just that mindset alone is going to prevent you from hearing whatever evidence is offered and in deciding whether an individual is guilty or innocent? Regardless of what you hear today, is it going to change your opinion?

[Sloan]: No.

Supplemental Transcript at 59-61. Barber's attorney questioned Sloan further about his ability to be fair and impartial and elicited a statement from Massey that she also believed Barber was arrested for a reason.

[Defense]: Mr. Sloan, I'm going to pick on you a little bit more. In the questionnaire it said that you couldn't be fair and impartial. I know that the State talked to you about it, but I just want to make sure I understood kind of what was going on. Can you explain again what you meant when you checked it that you couldn't be fair and impartial?

[Sloan]: Well, in order to be arrested, you've obviously done something wrong.

[Defense]: When you say "something wrong," do you mean – what you do mean?

[Sloan]: Like you broke the law or something like that.

3

[Defense]: So without having us actually go through the whole trial, since Ms. Barber was arrested, is it fair to say you judge her at this point?

[Sloan]: Yes.

[Defense]: Just a brief moment, Your Honor. Is there anyone else kind of like Mr. Sloan that sounds like he has made up his mind at this point? Yes?

[Massey]: I agree with him that just because – like you were arrested for a reason. Like --

[Defense]: Sure.

[Massey]: You know what I'm saying?

[Defense]: So is it fair to say at this point you've already judged without hearing what's going to happen? You have an opinion? Can you say it out loud?

[Massey]: Yes. I'm sorry.

[Defense]: Okay. And do you have any doubt about whether listening to the whole trial is going to change that opinion?

[Massey]: No.

Id. at 84-86. After this exchange, the defense requested that both Sloan and Massey be struck for cause. The trial court decided to follow up and offer each of them a chance to say they would follow the trial court's instructions. If they could not, then the trial court would excuse them. The trial court then presented the following question to Sloan and Massey:

[Court]: This question is for both Mr. Sloan and Ms. Massey both. Based on your answers about your sort of disposition toward things as you might hear them, that was at – both – I think both sides may have asked about your – what you think when someone is arrested. The Court gives instructions at both the beginning and the end of the case and that's supposed to be – and it is your best source in determining what the law is in the case. Let me just ask you if your opinion you think will trump the Court's instructions or do you think you can follow the Court's instructions? First, Mr. Sloan, you?

4

[Sloan]:  Yes.  I can follow the Court's instructions.

[Court]:  Ms. Massey?

[Massey]:  Yes.

Id. at 87-88.  Next, the trial court allowed the State to ask follow-up questions.[2]

> [State]:  All right.  I'll try to keep this brief.  We've kind of gone back and forth and just to be clear – and this is just specifically for Mr. Sloan and Ms. Massey.  The Court's instructions are to – as the Judge said, they're going to be to listen to the evidence, assign – afford every witness that sits up here the opportunity to testify and to give them the same credit across the board automatically and then, you know, you use your own opinions, self – life experiences if you were to determine how much credit you actually give them, but at least they're sworn to tell the truth.  We have our burden.  You're aware of all that at least at this point, correct?
>
> [Prospective Juror]:  Yes.
>
> [State]:  The issue is is [sic] that you both have already said that you can't be fair and impartial because you already think because she was arrested that she is guilty, correct?
>
> [Prospective Juror]:  Correct.
>
> [State]:  Okay.  Is that regardless – the same question just worded differently.  Regardless of what you're directed to do by the Court, will you always think that she's going to be guilty because she was arrested regardless of what answer you give, regardless of what your obligation is as a juror?
>
> [Prospective Juror]:  Guilty towards being intoxicated while driving?
>
> [State]:  Yes.  Yes.  That's what she's arrested for.  That's what she's charged with.  Will you – automatically, as she sits here right now, because she sits here right now and because she was arrested and charged, do you think she's guilty regardless of any – regardless of what you hear, regardless of what the Court asks you to do, and is that going to change throughout the course today?

---

[2]  During this last set of exchanges, the record is unclear as to whether the prospective juror (or jurors) answering the State's additional questions was Sloan, Massey, or a combination of the two.

5

[Prospective Juror]: No.

Id. at 88-90. Based on their answers and their commitment to follow the trial court's instructions, the trial court denied Barber's request to strike Sloan and Massey for cause but reminded Barber that she could still use her peremptory challenges to remove them. At the conclusion of voir dire of the first panel, the parties used their peremptory challenges to strike eight prospective jurors, including Sloan and Massey. Barber had one unused peremptory strike after the main jury was selected.

The jury found Barber guilty of operating a vehicle while intoxicated, a Class A misdemeanor, and failure to stop and remain at the scene of an accident, a Class C misdemeanor. The trial court sentenced Barber to 365 days, all suspended, without imposition of costs or fines. This appeal followed. Additional facts will be supplied as necessary.

### Discussion and Decision

### I. Striking a Prospective Juror For Cause

Barber argues on appeal that the trial court erred by denying her motion to strike jurors Sloan and Massey for cause. The State counters by arguing that Barber forfeited the issue for appeal by failing to exhaust her peremptory challenges during voir dire. For the reasons discussed below, we conclude that Barber failed to exhaust her peremptory challenges and therefore did not preserve the issue for appeal.

### A. The Exhaustion Rule

To preserve for appeal a claim that the trial court erred by denying a motion to strike a juror for cause, the party must have complied with the exhaustion rule. Whiting v. State, 969 N.E.2d 24, 29-30 (Ind. 2012). This rule requires that the party "demonstrate

6

that he or she either used a peremptory challenge to remove the challenged juror or had already exhausted his or her allotment of peremptories." Id. Furthermore, even if a party uses a peremptory challenge to remove the challenged juror, "reversible error occurs only where the defendant eventually exhausts all peremptories and is forced to accept either an incompetent or an objectionable juror." Id. at 30 (emphasis in original). An "objectionable juror" is one whom the party merely wishes to strike, while an "incompetent juror" is removable for cause. Id. at 30 n.7.

Here, Barber was charged with a Class A misdemeanor, and therefore, her jury consisted of six jurors. Ind. Jury Rule 16(a). More importantly, Barber and the State were each allotted five peremptory challenges for selection of the primary jury and one peremptory challenge for the portion of voir dire dedicated to selecting the alternate juror. Ind. Jury Rule 18(a) & (c). The record indicates that the trial court's method of selecting the jury was to call a panel of prospective jurors and allow each party to challenge members of that panel and accept those jurors who remained; then, if necessary, a second panel would be called, and so on, until six jurors and one alternate juror had been selected. The first panel consisted of fourteen prospective jurors, and the parties used peremptory challenges to remove eight prospective jurors, leaving the necessary six jurors remaining after voir dire of the first panel. A second panel was then called for the purpose of selecting the alternate juror.

After eight prospective jurors were struck from the first panel and the primary jury was set, Barber still had one peremptory strike remaining. In other words, Barber only used four of her five peremptory challenges during the selection of her six member jury. Simply stated, Barber did not "exhaust[] all peremptories," and therefore, the trial court's

7

denial of Barber's motion to strike two prospective jurors for cause cannot constitute reversible error. Whiting, 969 N.E.2d at 30.

In her reply brief, Barber contends that we should overlook her failure to exhaust her peremptory challenges and offers what we interpret as two separate arguments in support of that position. First, Barber argues that requiring her to exhaust her peremptories would be unjust because her attorneys "could not have known with 100% mathematical certainty that the second round of voir dire would be solely for selecting an alternate." Appellant's Reply Brief at 3. As a general matter, we disagree that this uncertainty renders the exhaustion rule unjust. Barber's attorney apparently understood the method of selecting the jury and that he had five peremptory challenges; he made a conscious, strategic decision to keep one peremptory challenge in his back pocket in case the State exercised all five of its own on the first panel.[3] While we acknowledge there is a degree of uncertainty involved and that saving a peremptory challenge for the second panel may have been a reasonable strategy, this does not excuse the requirement that a party exhaust her peremptory challenges to preserve this type of claim for appeal. Barber's attorneys cannot have their cake and eat it too.

Second, Barber argues that her failure to exhaust her peremptory challenges is irrelevant, because her attorney identified a number of objectionable jurors on the jury which exceeded the number of unused peremptory challenges. In other words, even if Barber had exhausted her peremptory challenges, she would have been forced to accept a juror whom she found objectionable. Barber's argument on this point ignores the plain

---

[3] In fact, all three of Barber's alleged objectionable jurors (Brunner, Cook, and Shaeffer) were accepted from the first panel. So, Barber could have used her fifth peremptory challenge to strike any one of those three jurors. Instead, she chose not to strike those jurors and to save her fifth peremptory challenge, on the chance that the State would use all five of its own peremptories and a more objectionable juror could be struck from a second panel.

language of the exhaustion rule and seeks to create an exception that virtually nullifies the rule altogether. We decline to indulge her request to create such an exception.

### B. The Trial Court's Denial of Barber's Motion to Strike for Cause

Even assuming, *arguendo*, that Barber had complied with the exhaustion rule or provided us with a viable exception to the rule, we would still conclude that the trial court did not abuse its discretion by denying Barber's request to strike Sloan and Massey for cause. The decision to dismiss a juror for cause rests within the sound discretion of the trial court. Ward v. State, 908 N.E.2d 595, 597 (Ind. 2009). A reviewing court will "afford substantial deference to the trial judge's decision respecting a challenge for cause and will find error only if the decision is illogical or arbitrary." Whiting, 969 N.E.2d at 29.

A juror shall be removed for cause if the juror has formed an opinion as to the guilt or innocence of the defendant and is unable to set that opinion aside and render an impartial verdict based on the law and the facts. Ind. Code § 35-37-1-5; Ind. Jury Rule 17(a)(4). As our supreme court has said,

> [t]o hold that the mere existence of any preconceived notion as to the guilt or innocence of an accused, without more, is sufficient to rebut the presumption of a prospective juror's impartiality would be to establish an impossible standard. It is sufficient if the juror can lay aside his impression or opinion and render a verdict based on the evidence presented in court.

Drollinger v. State, 274 Ind. 5, 14, 408 N.E.2d 1228, 1235 (1980) (quoting Murphy v. Florida, 421 U.S. 794, 800 (1975)).

Barber draws our attention to Walker v. State. 607 N.E.2d 391 (Ind. 1993), abrogated on other grounds by Dill v. State, 741 N.E.2d 1230 (Ind. 2001). In Walker, our supreme court held that the trial court did not abuse its discretion by denying the

9

defendant's motion to strike a juror for cause. Id. at 395. Similar to Sloan and Massey, the prospective juror in Walker said during voir dire that he believed when a person was arrested the police were correct ninety-nine percent of the time and the defendant was most likely guilty. Id. at 394. However, the juror later indicated that he understood the State's burden and that the defense did not have to prove anything. Id. He also said he would listen to the testimony presented and could be fair and impartial. Id.

Barber attempts to distinguish this case from Walker, asserting that Sloan and Massey were "unwavering" in their position that they could not be fair and impartial. Appellant's Brief at 12. We disagree. After Barber requested that Sloan and Massey be struck for cause, the trial court asked whether their opinion about arrests would trump the trial court's instructions and their ability to follow the law. Both unequivocally answered that they could follow the trial court's instructions and apply the law appropriately. Moreover, they also acknowledged that they understood and accepted the State's burden of proof.

We acknowledge that Sloan and Massey gave inconsistent and ambiguous answers as to whether they could follow the law and be impartial throughout the trial.[4] But it is in such circumstances where deference to the trial court is of particular import. See Ritchie

---

[4] We note that not only did Sloan and Massey give conflicting statements during voir dire, but they also provided ambiguous answers to the attorneys' questions on more than one occasion. This occurred where the attorneys presented Sloan or Massey with successive questions and were given only a "yes" or "no" response. The following exchange is one example of an ambiguous answer given by Sloan:

> [State]: Fair enough. And nothing you – that will – just that mindset alone is going to prevent you from hearing whatever evidence is offered and in deciding whether an individual is guilty or innocent? Regardless of what you hear today, is it going to change your opinion?

> [Sloan]: No.

Supp. Tr. at 60-61. The difficulty lies in the fact that a "no" to the State's first question would indicate the juror's ability to be impartial, while a "no" to the second question would indicate just the opposite.

v. State, 875 N.E.2d 706, 728 (Ind. 2007) ("When the prospective juror gives ambiguous, equivocal, or conflicting statements, assessing the demeanor of the venire is a critical factor in evaluating the attitude and qualification of potential jurors. Thus, the deference given to the trial court encompasses its resolution of any equivocations and conflicts in the prospective jurors' responses on voir dire.") (citation omitted). Even if this issue had not been forfeited by Barber's failure to exhaust her peremptory challenges, we would not have second-guessed the trial court's ability to determine the jurors' qualifications in the face of such conflicting and ambiguous answers during voir dire.

### Conclusion

Concluding that Barber did not preserve her claim because she failed to exhaust her peremptory challenges after challenging two prospective jurors for cause, we affirm.

Affirmed.

RILEY, J., and KIRSCH, J., concur.