## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



**FILED**

Jun 27 2016, 6:47 am

**CLERK**
Indiana Supreme Court
Court of Appeals
and Tax Court

| ATTORNEY FOR APPELLANT | ATTORNEYS FOR APPELLEE |
|---|---|
| Nancy A. McCaslin | Gregory F. Zoeller |
| McCaslin & McCaslin | Attorney General of Indiana |
| Elkhart, Indiana | |
| | Justin F. Roebel |
| | Deputy Attorney General |
| | Indianapolis, Indiana |

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Gurpreet Singh, | June 27, 2016 |
| *Appellant-Defendant,* | Court of Appeals Case No. 20A04-1508-CR-1097 |
| v. | Appeal from the Elkhart Superior Court |
| State of Indiana, | The Honorable David C. Bonfiglio, Judge |
| *Appellee-Plaintiff* | Trial Court Cause No. 20D06-1406-FD-657 |

**Mathias, Judge.**

[1] Gurpreet Singh ("Singh") was convicted in Elkhart Superior Court of three counts of Class D felony dealing in a synthetic drug or a synthetic drug

lookalike and three counts of Class D felony money laundering. Singh appeals his convictions and raises two issues on appeal:

I. Whether the trial court committed fundamental error when it admitted the synthetic marijuana purchased during three controlled buys into evidence; and

II. Whether sufficient evidence supports Singh's convictions.

We affirm.

## Facts and Procedural History

In February 2014, Elkhart City Police Officer Andrew Whitmyer ("Officer Whitmyer") made arrangements with a confidential informant to conduct an undercover buy of synthetic marijuana at a Marathon gas station on Bristol Street in Elkhart, Indiana. On February 11, the officer searched the confidential informant, and gave him $40 in buy money and a recording device.

The confidential informant entered the gas station and told Singh, the counter clerk, that he needed "a bag." Tr. pp. 25, 46-47. Singh gave the confidential informant a bag labeled "7h" and the informant gave Singh $40, $20 for the bag and $20 that he owed for a previous purchase of synthetic marijuana.

"7h" is a common brand or type of packaging for synthetic marijuana. Officer Whitmyer had seen "7h" numerous times in prior controlled buys. The confidential informant told the officer that the Marathon gas station on Bristol Street sold synthetic marijuana "like a speak easy," the sales were "hush hush," and the product was not displayed. Tr. pp. 44-45, 56, 73.

[6]     The next day, Officer Whitmyer and the confidential informant arranged a second controlled buy. Because of the quantity the confidential informant asked to purchase, the confidential informant requested a "special order" of synthetic marijuana. The officer then drove the confidential informant to the gas station, searched him, and gave him $500 in buy money and a recording device. The informant gave Singh the money, and Singh gave the informant two large black grocery bags from under the store's counter. The bags contained thirty-three small packages of "7h."

[7]     A third controlled buy occurred on May 28, 2014. On that date, the confidential informant was searched and provided with $20 and a recording device. He went into the gas station and told Singh that he "needed a bag." Tr. pp. 34, 62-63. Singh gave him a single bag of synthetic marijuana called "Eye Blown," which was packaged in a bag designed to look like an iPhone. Both Officer Whitmyer and the confidential informant were familiar with this brand of synthetic marijuana that was the "same as 7h." Tr. pp. 34, 63.

[8]     Officer Whitmyer attempted to make his own undercover purchase of synthetic marijuana from Singh. Howver, Singh told him that the station did not sell it. Tr. pp. 131-32. Another officer attempted to purchase synthetic marijuana on a separate occasion but was not successful. The confidential informant told the officers that Singh would not sell synthetic marijuana to him if other patrons were inside the store.

[9] When he was questioned by the police, Singh admitted that he sold the synthetic marijuana "on a couple of occasions." Tr. p. 77. Singh stated that he was not sure whether the substance was legal. He explained that the sales transaction would be entered into the gas station's cash register as "grocery" and the money from the sale was placed in the register. Tr. pp. 77-78. Singh was paid a salary for working at the gas station and did not receive any additional money or other benefit from the sale of the synthetic marijuana.

[10] On June 13, 2014, Singh was charged with three counts of Class D felony dealing in a synthetic drug or synthetic drug lookalike and three counts of Class D felony money laundering. A bench trial was held on March 13, 2015. Singh, who immigrated from India in 2010, speaks Punjabi, and an interpreter was appointed for trial. After the evidence was presented, the trial court took the matter under advisement.

[11] On April 20, 2015, Singh was found guilty as charged. For each Class D felony conviction, Singh was ordered to serve concurrent terms of 540 days with 180 days suspended to probation and the remainder to be served on community corrections. Singh now appeals. Additional facts will be provided as necessary.

## Fundamental Error

[12] Singh argues that the State did not present an adequate chain of custody for the synthetic marijuana and did not properly calibrate the scales used to weigh the drug. However, Singh did not object to the admission of the evidence on these grounds at trial and raises the arguments for the first time on appeal; therefore,

he cannot claim that the trial court abused its discretion in admitting the synthetic marijuana into evidence. *See Kubsch v. State*, 784 N.E.2d 905, 923 (Ind. 2003). To avoid waiver, Singh contends that the admission of the evidence constitutes fundamental error.

[13] "Fundamental error is an extremely narrow exception to the waiver rule where the defendant faces the heavy burden of showing that the alleged errors are so prejudicial to the defendant's rights as to make a fair trial impossible." *Ryan v. State*, 9 N.E.3d 663, 668 (Ind. 2014) (citation and internal quotation marks omitted). The error must be "so egregious and abhorrent to fundamental due process" that the trial judge should have acted, "irrespective of the parties' failure to object or otherwise preserve the error for appeal." *Whiting v. State*, 969 N.E.2d 24, 34 (Ind. 2012).

[14] First, we address Singh's argument that the State did not establish an adequate chain of custody for the synthetic marijuana. "The State is required to show a chain of custody for the purpose of showing the unlikelihood of tampering, loss, substitution or mistake[,]" but a perfect chain of custody is not required. *Vaughn v. State*, 13 N.E.3d 873, 882 (Ind. Ct. App. 2014) (citation omitted), *trans. denied*. "If the State presents evidence that strongly suggests the exact whereabouts of the evidence at all times, that is sufficient." *Id*. To successfully challenge chain of custody, the defendant must present evidence that overcomes the presumption that public officers exercise due care in handling evidence. *Troxell v. State*, 778 N.E.2d 811, 814 (Ind. 2002). Merely raising the possibility of tampering or mistake is insufficient. *Id*.

[15]     At trial, Officer Whitmyer testified that after the confidential informant turned the synthetic marijuana over to him after each controlled buy, he retained possession of it until the evidence was "entered into the wet room." Tr. p. 26. The officer stated that he put the evidence in a plastic bag, wrote the assigned case number on the bag, sealed the bag and initialed it, and prepared a voucher for the evidence. The voucher was attached to the plastic bag and then placed into the evidence locker. Tr. p. 27. Once the evidence was placed in the locker, only the evidence clerks had access to the locker. Tr. p. 32. The evidence clerks then transferred the evidence to a more secure area where the evidence remained until it was requested by the officer. Tr. p. 36.

[16]     The officer removed the exhibits from the evidence room on one occasion to weigh them. After he finished, he resealed the bags, and he put his initials and date on the exhibit. The evidence clerk remained with Officer Whitmyer while he was weighing the synthetic marijuana, and the the clerk took the exhibits back to the secure evidence area. Tr. p. 38. The evidence remained with the evidence clerk until the morning of trial when Officer Whitmyer requested them from the evidence clerk and brought them with him to trial. Tr. pp. 38-39.

[17]     Prior to introducing the synthetic marijuana purchased during the three controlled buys, i.e. Exhibits 5, 6, and 7, into evidence at trial, Officer Whitmyer testified that his initials were on the exhibits, he recognized the case number and had personally written the case number on the bag containing the synthetic marijuana. *See* Tr. pp. 30-35; Ex. Vol., State's Ex. 5, 6, and 7. Officer Whitmyer testified that it did not appear that the three exhibits had been

tampered with and that they were in substantially the same condition as on the day they were obtained during the respective controlled buys. Tr. p. 39.

[18] Officer Whitmyer's testimony strongly suggests the exact whereabouts of the synthetic marijuana at all times. Therefore, the State established a sufficient chain of custody. *See Vaughn*, 13 N.E.3d at 882. In his brief, Singh argues that the exhibits could have been tampered with, but a mere possibility of tampering is insufficient to overcome the presumption of due care in evidence handling. *See Troxell*, 778 N.E.2d at 814. Therefore, Singh has not established error necessary to support a claim of fundamental error.

[19] Singh also argues that the State failed to prove that the scales used to weigh the synthetic marijuana were properly calibrated.[1] Although the State bore the burden to establish that the scale used to measure the weight of the synthetic marijuana was properly calibrated, the scale's accuracy is foundational evidence and not an element of the crime. *See McKnight v. State*, 1 N.E.3d 193, 203 (Ind. Ct. App. 2013) (citations omitted).

[20] Here, Officer Whitmyer placed a nickel on the scale to calibrate it. Tr. p. 37. The officer testified that a nickel weighs five grams. *Id*. While it is possible that the officer's nickel did not weigh precisely five grams, since each of the buys at issue involved more than the Class D felony threshold of more than two grams,

---

[1] Singh was charged with three counts of Class D felony dealing in a synthetic drug or synthetic drug lookalike substance of more than two grams. See Appellant's Confidential App. p. 14. The officer testified that one bag of synthetic marijuana from each controlled buy weighed five grams. Tr. p. 37.

we cannot conclude that the officer's potentially imprecise calibration of the scale constitutes fundamental error.

## Sufficient Evidence

Singh argues that the evidence is insufficient to prove he knowingly sold a synthetic drug or synthetic drug lookalike to the confidential informant or that he committed money laundering. When the sufficiency of evidence is challenged, we neither reweigh the evidence nor judge the credibility of witnesses. *Chappell v. State*, 966 N.E.2d 124, 129 (Ind. Ct. App. 2012) (citing *McHenry v. State*, 820 N.E.2d 124, 126 (Ind. 2005)), *trans. denied*. Rather, we recognize the exclusive province of the trier of fact to weigh any conflicting evidence and we consider only the probative evidence supporting the conviction and the reasonable inferences to be drawn therefrom. *Id*. If substantial evidence of probative value exists from which a reasonable trier of fact could have drawn the conclusion that the defendant was guilty of the crime charged beyond a reasonable doubt, then the judgment will not be disturbed. *Baumgartner v. State*, 891 N.E.2d 1131, 1137 (Ind. Ct. App. 2008).

### A. Dealing in a Synthetic Substance

[21] To prove that Singh committed Class D felony dealing in a synthetic drug or synthetic drug lookalike, the State was required to prove that Singh knowingly delivered more than two grams of a synthetic drug or a synthetic drug lookalike.

Ind. Code 35-48-4-10.5;[2] Appellant's Confidential App. pp. 14-15. Singh argues that the State failed to prove both what substance was in the packages the confidential informant purchased and that Singh knew the substance was synthetic marijuana rather than tobacco.

[22] During the controlled buys, the confidential informant purchased a substance packaged as "7h" or "Eye Blown." The confidential informant was an admitted frequent user of the substance "7h" and described it as "ground up plants that are sprayed with a chemical or something," "a synthetic substance, supposedly a fake marijuana." Tr. pp. 48-49, 53. The confidential informant told Officer Whitmyer that using "7h" causes impairment and is "far more harsh" than marijuana. Tr. p. 48. The confidential informant also told the officer that "Eye Blown" was "the same as '7h.'" Officer Whitmyer testified that he has seen these brands of synthetic marijuana "on the street" and in prior controlled buys, and "7h" is a common brand for synthetic marijuana. Tr. p. 25.

[23] The packages of "7h" and "Eye Blown" were not displayed at the gas station but kept in a bag behind the counter. The confidential informant purchased the synthetic drug by asking for "a bag." When undercover officers attempted to buy "a bag," Singh told them that the gas station did not sell it. Singh was authorized to charge between $12 and $50 for "a bag." The confidential informant received

[2] On July 1, 2014, the General Assembly amended Indiana Code section 35-48-4-10.5 to make the offense a felony when the amount of the synthetic drug or synthetic drug lookalike involved in the offense is more than five grams. Singh committed these offenses in February and March 2014.

each of the buys in an unmarked grocery bag, and the sale was rung up generically as "groceries or lottery." Singh would not sell synthetic marijuana to the confidential informant if other people were inside the gas station. The confidential informant testified that at certain times Singh would not sell the synthetic marijuana because police had been in the gas station and Singh's boss had told him not to sell it for a week. Tr. pp. 134-36. Singh also lied when he told the police he had only sold a few bags of synthetic marijuana, and he never told the police that he thought he was selling tobacco. Ex. Vol., State's Ex. 9.

[24] Considering these facts and circumstances, the State proved that Singh knowingly sold synthetic marijuana or a synthetic drug lookalike substance to the confidential informant on the three dates as charged. *See* Appellant's Confidential App. pp. 14-15; Ind. Code § 35-31.5-2-321.5 (defining a synthetic drug lookalike); *See Clark v. State*, 6 N.E.3d 992, 998-99 (Ind. Ct. App. 2014) (quoting *Vasquez v. State*, 741 N.E.2d 1214, 1216-17 (Ind. 2001) (stating "[t]he identity of a drug can be proven by circumstantial evidence")). For all of these reasons, we conclude that the evidence is sufficient to support Singh's dealing in a synthetic drug or synthetic drug lookalike substance convictions.

### B. Money Laundering

[25] To prove that Singh committed money laundering, the State was required to prove that Singh knowingly acquired or maintained an interest in, received, concealed, possessed, transferred, or transported the proceeds of a criminal activity. Ind. Code 35-45-15-5(a); Appellant's Confidential App. pp. 14-15. The

term "proceeds" is defined by statute as "funds acquired or derived directly or indirectly from, produced through, or realized through an act." Ind. Code § 35-45-15-4. The term "criminal activity" is defined by statute as "any offense" that "is classified as a felony under Indiana" law. Ind. Code § 35-45-15-1. Singh argues that the State failed to prove that he transferred proceeds of a criminal activity because he merely put money in the cash register and did not receive any proceeds from the sale of the synthetic marijuana.

[26] The State proved that on three occasions, Singh sold synthetic drugs to the confidential informant. Singh took the informant's money in exchange for the synthetic drug. He placed the money into the gas station's cash register, effectively transferring the buy money from the confidential informant to the gas station's owner. This evidence is sufficient to prove that Singh knowingly transferred the proceeds of a criminal activity. For these reasons, we affirm his Class D felony money laundering convictions.

## Conclusion

[27] The trial court did not commit fundamental error when it admitted the three exhibits containing the synthetic drug into evidence. Sufficient evidence supports Singh's three Class D felony dealing in a synthetic drug or synthetic drug lookalike and three Class D felony money laundering convictions.

[28] Affirmed.

Vaidik, C.J., and Barnes, J., concur.