Charles SWEENEY, Appellant–
Petitioner,

v.

STATE of Indiana, Appellee–
Respondent.

No. 10A01–0707–PC–303.

Court of Appeals of Indiana.

April 23, 2008.

Rehearing Denied June 17, 2008.

Susan Schultz, Corydon, IN, Attorney for Appellant.

Steve Carter, Attorney General of Indiana, Zachary J. Stock, Deputy Attorney General, Indianapolis, IN, Attorneys for Appellee.

## OPINION

BAILEY, Judge.

### Case Summary

Appellant–Petitioner Charles Sweeney ("Sweeney") appeals the denial of his petition for post-conviction relief, which challenged his conviction for Murder.[1] We affirm.[2]

### Issues

■ Sweeney presents four issues for review, two of which are neither res judicata nor procedurally defaulted:

I. Whether the post-conviction court erroneously determined that the doctrine of laches barred consideration of Sweeney's post-conviction claims; and

II. Whether Sweeney was denied the effective assistance of appellate counsel.[3]

### Facts and Procedural History

On direct appeal, our Supreme Court recited the underlying facts as follows:

---

[1] Ind.Code § 35–42–1–1.

[2] Oral argument was conducted on April 9, 2008, at Indiana University Southeast in New Albany, Indiana. We commend counsel on the quality of their written and oral advocacy, and thank our host, Indiana University Southeast, for its hospitality.

[3] Sweeney attempts to present a free-standing claim that his statement to federal officials, observed by Clark County Detective Harold Kramer on closed circuit television, was an inadmissible involuntary statement because it was not preceded by a Miranda warning. Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966). However, on direct appeal of Sweeney's conviction, our Supreme Court addressed this contention and decided it adversely to Sweeney, stating in pertinent part: "under the circumstances of this case, we find that it was unnecessary for defendant to be advised of his Miranda rights." Sweeney v. State, 704 N.E.2d 86, 104 (Ind.1998). The United States Court of Appeals, Seventh Circuit concluded "[t]he record here shows unequivocally that Sweeney knowingly and voluntarily waived his Miranda rights." Sweeney v. Carter, 361 F.3d 327, 331 (7th Cir.2004). Thus, the issue is res judicata. See Rouster v. State, 705 N.E.2d 999, 1003 (Ind.1999) (holding in relevant part that an issue raised on direct appeal but decided adversely to the appellant is res judicata).

On May 28, 1991, the victim, Danny Guthrie, left his family to go fishing with defendant. Guthrie did not return home that evening and his wife assumed that he decided to camp over with defendant. The next morning defendant called to see if Guthrie wanted to check the trout lines. Guthrie's wife informed the defendant that Guthrie never returned home and the defendant told Guthrie's wife that he brought Guthrie home between 4:00 and 6:00 p.m. the previous day. After several unsuccessful attempts to obtain more information from defendant, Guthrie's wife called the police. On May 29, 1991, Detective Kramer, the lead investigator, and other police officers questioned the defendant at his home. However, no arrest was made and Guthrie remained missing.

In February, 1992, defendant was investigated by the Bureau of Alcohol, Tobacco and Firearms for placing a pipe bomb under Detective Kramer's police car. After being charged for these offenses, defendant entered into a plea agreement with the U.S. Attorney's Office on June 26, 1992. Pursuant to the plea agreement, defendant pled guilty to placing the bomb under Kramer's car, agreed to implicate all others involved in the bombing and also to disclose the whereabouts of Guthrie's body and any information relating to the cause of Guthrie's death. We summarize defendant's story as communicated to federal authorities as follows.

According to defendant, on the return trip from the fishing expedition, defendant agreed to give Guthrie approximately 150 marijuana plants in exchange for a saddle. Immediately after arriving at defendant's home, defendant explained to Guthrie where the marijuana plants were located and provided Guthrie with a shovel, two buckets, and a 9 mm gun for protection. Defendant claimed that he then went to play bingo at the Sellersburg Moose Lodge and did not see Guthrie again that evening. The next day (May 29, 1991), after Guthrie's wife claimed that Guthrie never came home, defendant alleges that he went to look for Guthrie and found him dead with a gunshot wound to the head. He also found the 9mm gun that he had given Guthrie the day before with one round missing and an empty shell casing a foot or two south of Guthrie's body. Because defendant did not want the police to discover the marijuana, he dragged Guthrie's body to a ditch located behind a trailer and buried the body with sweet lime and covered it with dirt and trash. He then threw the shell casings in a creek, and placed one shoe and a pair of sunglasses in the burn barrel by his trailer. Defendant also buried the gun in an ammunition can near his home, but at a later date retrieved the gun and had it in his possession for personal protection. Defendant told the authorities that eventually the gun was seized from him in the State of Utah as a result of a routine traffic violation. At all times, defendant proclaimed his innocence.

On July 1, 1992, the police obtained a search warrant for defendant's property and located Guthrie's body in the area described by defendant. An autopsy was performed on the body on July 2, 1992, and the medical examiner positively identified the body as that of Daniel Guthrie. The examiner also retrieved the bullet that caused Guthrie's death. The bullet and the 9mm gun that was confiscated from defendant by a Utah police officer [were] sent to the Bureau of Alcohol, Tobacco and Firearm Laboratory. The Bureau confirmed that the bullet that killed Guthrie had been fired

from the 9mm gun belonging to the defendant.

On August 10, 1992, Judge Donahue in the Clark Circuit Court issued a warrant to arrest the defendant for the murder of Guthrie. On October, 8, 1992, upon the State's request, Judge Donahue issued a writ of habeas corpus ad prosequendum (a writ of habeas corpus ad prosequendum is referred to in this opinion as a "Writ") so that the State could obtain temporary custody of defendant. At that time, defendant was incarcerated in federal prison in Louisville, Kentucky and was scheduled to be sentenced that very same day by Judge Barker in the United States District Court for the Southern District of Indiana. The defendant was transported to Clark County shortly after the Writ was issued. On October 22, 1992, defendant filed a Motion to Quash the Writ, and a hearing was held on the motion on November 10, 1992. The focus of the hearing concerned whether the State had jurisdiction over the defendant. Defendant argued that before he was sentenced in federal court, the State could have sought temporary custody of him through the use of the Writ, but once defendant was sentenced, the State was obligated to follow the procedures set forth in the Interstate Agreement on Detainers (referred to in this opinion as the "IAD"). In order to avoid conducting a trial and then having a higher court decide that the trial court had no jurisdiction over defendant, Judge Donahue decided that the safer approach would be to return defendant to federal prison and proceed appropriately. Consequently, Judge Donahue granted defendant's motion and ordered that the Writ be held for naught and declared void.

On April 22, 1993, the State dismissed charges against the defendant, and defendant was sent back to federal prison in Kentucky. The State refiled charges on March 30, 1994. On August 1, 1994, upon the State's request, Judge Donahue granted another writ of habeas corpus ad prosequendum so that the State could obtain temporary custody of defendant. At this time, defendant was being held at the Federal Correctional Institution in Manchester, Kentucky. For the second time, defendant was transported to Clark County. In response, defendant filed a Motion to Quash the Writ on September 13, 1994, and on October 3, 1994, Judge Donahue held a hearing on this matter. Once again, defendant contended that the IAD was the exclusive means of obtaining temporary custody of defendant. Additionally, defendant argued that the circumstances surrounding the issuance of both Writs were identical and that because the issue had been litigated, the doctrine of res judicata and collateral estoppel applied. Judge Donahue denied defendant's Motion to Quash the Writ, relying on the fact that defendant's custody status had changed since the first Writ was issued.

A jury trial was conducted on November 14, 1995, and defendant was found guilty of the murder of Guthrie. The trial court sentenced defendant to 60 years to be served upon the completion of his federal sentence of 210 months.

*Sweeney*, 704 N.E.2d at 91–93.

Sweeney directly appealed to the Indiana Supreme Court, raising ten allegations of error including ineffectiveness of trial counsel and omission of *Miranda* warnings. The Court affirmed Sweeney's conviction and sentence. *Sweeney*, 704 N.E.2d at 112. Sweeney sought a writ of habeas corpus in federal court. On February 27, 2001, the United States District Court for the Southern District of Indiana

denied the petition. 2001 WL 1800934. On March 15, 2004, the Seventh Circuit Court of Appeals affirmed the decision of the District Court. *Sweeney*, 361 F.3d at 334.

On October 25, 2005, Sweeney filed a petition for post-conviction relief, which was amended on February 13, 2006. Therein, Sweeney alleged a lack of *Miranda* advice, ineffective assistance of trial and appellate counsel, admission of evidence in violation of a federal court order, and lack of jurisdiction by the State of Indiana to detain Sweeney, move him from the State of Kentucky, and try him on a state charge of murder.

A hearing was conducted on April 16, 2007. On June 4, 2007, the post-conviction court issued its findings of fact, conclusions of law, and order. This appeal ensued.

**Discussion and Decision**

*I. Laches*

The equitable doctrine of laches operates to bar consideration of the merits of a claim or right of a person who has neglected for an unreasonable time, under circumstances permitting due diligence, to do what in law should have been done. *Armstrong v. State*, 747 N.E.2d 1119, 1122 (Ind.2001). In order for laches to apply, the State must prove by a preponderance of the evidence that the petitioner unreasonably delayed in seeking relief and that the State is prejudiced by the delay. *Id.* For purposes of establishing laches in post-conviction proceedings, prejudice exists when the unreasonable delay operates to materially diminish a reasonable likelihood of successful re-prosecution. *Id.*

■ In this case, the post-conviction court found that the State had met its burden of proof to show laches, and Sweeney contends otherwise. Where a post-conviction court has erroneously applied the defense of laches to bar consideration of the claims presented in a post-conviction petition, the appropriate remedy is to remand for further proceedings with respect to the petition for post-conviction relief. *Id.* Here, however, despite the language of the post-conviction court's final conclusion of law, the court did not permit the doctrine of laches to preclude review of Sweeney's post-conviction claims. Rather, the post-conviction court actually addressed each of Sweeney's claims upon the merits. As such, the finding of laches was superfluous and a remand for further proceedings is unnecessary.

*II.A. Post–Conviction Standard of Review*

■ Defendants who have exhausted the direct appeal process may challenge the correctness of their convictions and sentences by filing a post-conviction petition. *Stevens v. State*, 770 N.E.2d 739, 746 (Ind.2002). Post-conviction proceedings are civil in nature and a defendant must establish his claims by a preponderance of the evidence. *Ben–Yisrayl v. State*, 738 N.E.2d 253, 258 (Ind.2000). A petitioner who has been denied post-conviction relief appeals from a negative judgment, and to the extent that his appeal turns on factual issues, he must convince this Court that the evidence as a whole leads unerringly and unmistakably to a decision opposite that reached by the post-conviction court. *Stevens*, 770 N.E.2d at 745. We do not defer to the post-conviction court's legal conclusions, but accept its factual findings unless they are clearly erroneous. *Id.*

■ Appellate courts should be particularly deferential to an appellate counsel's strategic decision to include or exclude issues, unless the decision was "unquestionably unreasonable." *Bieghler v. State*, 690 N.E.2d 188, 194 (Ind.1997). To prevail on his claim of ineffective assistance of appellate counsel, Sweeney

must show that counsel failed to present a significant and obvious issue and that this failure cannot be explained by reasonable strategy. *See Stevens*, 770 N.E.2d at 760.

### II.B. Effectiveness of Appellate Counsel

Sweeney alleges, and the State does not dispute, that Sweeney received poor counsel when he was advised to rely upon an ostensible use immunity agreement despite the fact that such an agreement is binding only when reduced to writing and approved by the trial court.[4] On direct appeal, the Indiana Supreme Court "assume[d], without deciding, that counsel was deficient for failing to obtain an agreement in writing." *Sweeney*, 704 N.E.2d at 106. Nevertheless, the Court concluded that, because the State had not yet filed charges for the murder of Guthrie, "defendant's Sixth Amendment right to counsel and, thus, his right to the effective assistance of counsel had not attached when he provided statements regarding the location of Guthrie's body." *Id.*

Sweeney contends that his appellate counsel was ineffective for failing to properly develop the issue of ineffective assistance of trial counsel by presenting, in addition to the Sixth Amendment argument, legal arguments premised upon the Fifth Amendment and Article 1, Section 13 of the Indiana Constitution. Sweeney also faults his appellate attorney for failing to secure a complete trial record and failing to raise an issue of illegal transport from the State of Kentucky.

Appellate ineffectiveness claims are evaluated under the standard of *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). To prevail on a claim of ineffective assistance of counsel, a petitioner must show two things: (1) the lawyer's performance fell below an objective standard of reasonableness; and (2) there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. *Id.* at 694, 104 S.Ct. 2052. A reasonable probability is a probability sufficient to undermine confidence in the outcome. The two prongs of the *Strickland* test are separate and independent inquiries. *Id.* at 697, 104 S.Ct. 2052. Thus, "[i]f it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice ... that course should be followed." *Id.*

*Failure to Demonstrate Trial Counsel's Ineffectiveness.* A defendant who chooses to raise on direct appeal a claim of ineffective assistance of trial counsel is foreclosed from relitigating that claim. *Timberlake v. State*, 753 N.E.2d 591, 601 (Ind.2001). However, the petitioner may allege that appellate counsel was ineffective for failure to properly raise and support deficient performance of trial counsel. *Id.* at 606. In this instance, the petitioner must show from the information available in the trial record or otherwise known to appellate counsel that appellate

---

4. *See* Ind.Code § 35–37–3–3. Although it declined to recognize the United States Supreme Court's "willingness to extend *Strickland* to novel contexts" the Seventh Circuit Court went on to say "None of this should be read to condone the wholly inadequate performance of defense counsel in this case. Viewing the facts in nearly any light, that performance fell below an objective standard of reasonableness under any account of pre-

vailing norms of professionalism and would easily meet both parts of the *Strickland* standard (assuming of course that it could be applied at this stage). Any lawyer worth her salt should have known that an extrajudicial agreement that has not received the imprimatur of the court is unenforceable under Indiana law, let alone 'carved in stone.' " *Sweeney*, 361 F.3d at 334.

counsel failed to present a significant and obvious issue and that this failure cannot be explained by any reasonable strategy. *Id.*

■ The petitioner faces a compound burden, because he must establish the two elements of ineffective assistance of counsel as to both trial and appellate counsel. *Seeley v. State*, 782 N.E.2d 1052, 1059 (Ind.Ct.App.2003), *trans. denied.* An assertion of appellate ineffectiveness challenging the quality of counsel's treatment of an issue actually presented must "overcome the strongest presumption of adequate assistance." *Bieghler*, 690 N.E.2d at 196. For purposes of ineffective assistance of counsel claims, the law requires consideration of legal precedent available to counsel at the time of his representation of the accused, and counsel will not be deemed ineffective for not anticipating or initiating changes in the law. *Gann v. State*, 550 N.E.2d 73, 75 (Ind.1990).

■ Sweeney argued in federal court that the deficient pre-trial performance of counsel violated his Fifth Amendment right to due process, applicable to state action through the Fourteenth Amendment. The Fifth Amendment to the United States Constitution provides in relevant part:

Nor shall [any person] be compelled in any criminal case to be a witness against himself, nor be deprived of life, liberty, or property, without due process of law[.]

*Strickland*-like review of counsel's effectiveness has not heretofore been applied to Fifth Amendment deprivation of counsel cases, as explained by the Seventh Circuit Court in affirming the denial of Sweeney's habeas corpus petition:

At this point, however, Sweeney runs headlong into the AEDPA [Antiterrorism and Effective Death Penalty Act of 1996] standard of review. While he was fully entitled to ask the Indiana Supreme Court to apply a *Strickland*-like standard to his claim, that court was obliged to do so only if existing U.S. Supreme Court precedent clearly established such a rule. Here, it is clear that the Supreme Court has not taken the step that Sweeney needs. Indeed, as far as we can tell, the Supreme Court has not mentioned effective assistance of counsel (in the *Strickland* sense) and the Fifth Amendment in the same breath, let alone set forth a clearly established right to that effect. To the contrary, the Court has been at pains in the Sixth Amendment context to note that the right to counsel attaches only at the initiation of adversary criminal proceedings, and not before.... From there, it is a short step to the conclusion that the Indiana Supreme Court's decision cannot be called "contrary to" or "an unreasonable application of" a decision of the United States Supreme Court.

*Sweeney*, 361 F.3d at 333–34. The Sixth Amendment right to counsel attaches only at the initiation of adversary criminal proceedings. *See Davis v. United States*, 512 U.S. 452, 456, 114 S.Ct. 2350, 129 L.Ed.2d 362 (1994). "[B]efore proceedings are initiated a suspect in a criminal investigation has no constitutional right to the assistance of counsel." *Id.* at 457, 114 S.Ct. 2350. Nevertheless, *Miranda* established that a suspect subject to custodial interrogation has the right to consult with an attorney, a "procedural safeguard" not itself protected by the Constitution but a "measure to insure that the right against compulsory self-incrimination was protected." *Id.* As such, the process to which Sweeney was due under the Fifth Amendment is that described in *Miranda*. Sweeney did have the procedural safeguard of counsel. He waived specific advisements,

he did in fact consult with attorneys, but he did so to his detriment.

■ As the Seventh Circuit observed in Sweeney's habeas corpus proceedings, the *Strickland* effectiveness criteria had not been applied to claims of deprivation of counsel under the Fifth Amendment. In light of the absence of supporting authority, Sweeney's appellate counsel could not have been expected to argue that Sweeney possessed not only a Sixth Amendment right to effective assistance of counsel after being charged but also had a Fifth Amendment "due process" right to the effective assistance of counsel at the earlier, investigative stage.[5]

Appellate counsel also omitted an allegation of ineffectiveness under Article I, § 13 of the Indiana Constitution. Article I, § 13, like the Sixth Amendment, guarantees the right to counsel at any critical stage of prosecution where counsel's absence " 'might derogate from the accused's right to a fair trial.' " *Koehler v. State*, 499 N.E.2d 196, 198 (Ind.1986) (quoting *United States v. Wade*, 388 U.S. 218, 228, 87 S.Ct. 1926, 18 L.Ed.2d 1149 (1967)).

■ Article I, § 13 of the Indiana Constitution states in relevant part, that "[i]n all criminal prosecutions, the accused shall have the right to a public trial, by an impartial jury, in the county in which the offense shall have been committed; to be heard by himself and counsel[.]" Section 13 affords greater protection than its federal counterpart, the Sixth Amendment right to counsel. *Malinski v. State*, 794 N.E.2d 1071, 1078–79 (Ind.2003). Depending on the circumstances, the Section 13 right attaches prior to the filing of formal charges against the defendant. *Pruitt v. State*, 834 N.E.2d 90, 116 (Ind.2005), *cert. denied*, 548 U.S. 910, 126 S.Ct. 2936, 165 L.Ed.2d 962 (2006). Most Section 13 cases "turn on whether the defendant made a clear request for counsel." *Malinski*, 794 N.E.2d at 1079. They involve a complete deprivation of counsel, not counsel giving erroneous advice. *See Ajabu v. State*, 693 N.E.2d 921, 926 (Ind.1998) (failure to inform custodial suspect that attorney had called the police station); *Pruitt*, 834 N.E.2d at 117 (suspect confessed under influence of drugs but did not request an attorney); *Malinski* (attorney hired by family present at police station without suspect's knowledge).

The foregoing cases have Fifth Amendment-like implications, as they involve deprivation of counsel. Their common discussion of "knowing and intelligent waiver" of right to counsel under Section 13 is not dispositive of Sweeney's contention that (1) his right to counsel attached pre-charging (2) his right to counsel included the right to *effective* assistance (3) his counsel was ineffective and (4) appellate counsel should have known this.

Sweeney argues that the right to counsel is meaningless if it is not equivalent to a right to effective counsel. It may well be that, at some future date, our Indiana Supreme Court interprets Article I, Section 13 in this manner. However, the fact

---

5. We observe that, had counsel lodged this argument, he would have been beset by some practical problems. The application of the two-prong *Strickland* analysis, i.e., performance and prejudice, to the pre-charge performance of counsel would be impractical if not impossible. Pre-trial hearings and trial are recorded, and thus counsel's trial performance may be assessed based upon a verifiable record. However, interactions between counsel and client before charges are lodged (during which advice is presumably given) are not recorded and there exists no record for review. Moreover, if ineffectiveness of counsel is demonstrated, the remedy is retrial. A retrial does not equate to the relief that Sweeney desires, which is to suppress the information that he gave about the location of the victim's body (and the derivative evidence).

remains that there were available to Sweeney's appellate counsel no pre–1988, Article I, Section 13 cases applying *Strickland*-like analysis to pre-charge representation by counsel. Accordingly, appellate counsel did not overlook an obvious issue with a greater chance of success than those issues actually raised.

 *Appellate Record.* Appellate counsel requested a complete trial record but, according to post-conviction counsel, the record received by appellate counsel (and later provided to post-conviction counsel) excluded preliminary and final instructions, opening statements, closing arguments, jury questions and the verdict. Post-conviction counsel argues that this is deficient performance by appellate counsel, and has apparently secured a complete trial record. However, the post-conviction appellate brief proffers no explanation of what argument might have been developed from a more complete record on direct appeal. In other words, the additional portions of trial record apparently do not disclose obvious issues for appeal.

 *Transport without Federal Officer.* Sweeney alleges that appellate counsel failed to ask that the Indiana Supreme Court apply Indiana Code Section 35–38–3–2(d) and "correct his erroneous sentence." Appellant's Brief at 22. Sweeney alleges that he was transported from Kentucky by Indiana officials, in violation of Indiana Code Section 35–33–10–5(2), which sets forth procedures for obtaining a writ of habeas corpus ad prosequendum and contemplates that the prisoner shall be "under the custody of a federal public servant." Sweeney postulates that this "stopped and started" his federal sentence and he "cannot now be returned and compelled to serve the balance of [the Indiana] sentence." Appellant's Brief at 21–22.

 Sweeney did not present any testimony at the post-conviction hearing from which the post-conviction court could make a factual determination as to whether or not Clark County officials or State of Indiana officials were accompanied by a federal official when transporting Sweeney from Kentucky to Indiana. No statutory violation was established. Also, Sweeney does not present legal authority for the proposition that his Indiana sentence was "stopped," illegal, or subject to "correction" if challenged by appellate counsel.

In light of the foregoing, Sweeney has not established that he received ineffective assistance of appellate counsel due to counsel's failure to fully develop an ineffectiveness argument pertaining to trial counsel.

Affirmed.

MAY and BRADFORD, JJ., concur.