## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



**FILED**
Jun 30 2015, 10:19 am

*Kevin S. Smith*

**CLERK**
of the supreme court,
court of appeals and
tax court

ATTORNEY FOR APPELLANT

Mark Small
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE

Gregory F. Zoeller
Attorney General of Indiana

J. T. Whitehead
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

Charles Sweeney,

*Appellant-Defendant,*

v.

State of Indiana,

*Appellee-Plaintiff.*

June 30, 2015

Court of Appeals Case No. 10A01-1411-CR-488

Appeal from the Clark Circuit Court.

The Honorable Daniel E. Moore, Judge.

Cause No. 10C01-9403-CF-51

**Riley, Judge.**

## STATEMENT OF THE CASE

Appellant-Defendant, Charles Sweeney (Sweeney), appeals the trial court's denial of his petition for jail time credit.

We affirm.

## ISSUE

Sweeney raises four issues on appeal, which we consolidate and restate as the following single issue: Whether the trial court abused its discretion in denying his petition for jail time credit.

## FACTS AND PROCEDURAL HISTORY

In Sweeny's direct appeal, our supreme court recited the underlying facts as follows:

> On May 28, 1991, the victim, Danny Guthrie, left his family to go fishing with [Sweeney]. Guthrie did not return home that evening and his wife assumed that he decided to camp over with [Sweeney]. The next morning, [Sweeney] called to see if Guthrie wanted to check the trout lines. Guthrie's wife informed [Sweeney] that Guthrie never returned home and [Sweeney] told Guthrie's wife that he brought Guthrie home between 4:00 and 6:00 p.m. the previous day. After several unsuccessful attempts to obtain more information from [Sweeney], Guthrie's wife called the police. On May 29, 1991, Detective Kramer, the lead investigator, and other police officers questioned [Sweeney] at his home. However, no arrest was made and Guthrie remained missing.

In February 1992, [Sweeney] was investigated by the Bureau of Alcohol, Tobacco and Firearms for placing a pipe bomb under Detective Kramer's police car. After being charged for these offenses, [Sweeney] entered into a plea agreement with the U.S. Attorney's Office on June 26, 1992. Pursuant to the plea agreement, [Sweeney] pled guilty to placing the bomb under Kramer's car, agreed to implicate all others involved in the bombing and also to disclose the whereabouts of Guthrie's body and any information relating to the cause of Guthrie's death. We summarize [Sweeney's] story as communicated to the federal authorities as follows.

According to [Sweeney], on the return trip from the fishing expedition, [Sweeney] agreed to give Guthrie approximately 150 marijuana plants in exchange for a saddle. Immediately after arriving at [Sweeney's] home, [Sweeney] explained to Guthrie where the marijuana plants were located and provided Guthrie with a shovel, two buckets, and a 9mm gun for protection. [Sweeney] claimed that he then went to play bingo at the Sellersburg Moose Lodge and did not see Guthrie again that evening. The next day (May 29, 1991), after Guthrie's wife claimed that Guthrie never came home, [Sweeney] alleges that he went to look for Guthrie and found him dead with a gunshot wound to the head. He also found the 9mm gun that he had given Guthrie the day before with one round missing and an empty shell casing a foot or two south of Guthrie's body. Because [Sweeney] did not want the police to discover the marijuana, he dragged Guthrie's body to a ditch located behind a trailer and buried the body with sweet lime and covered it with dirt and trash. He then threw the shell casings in a creek, and placed one shoe and a pair of sunglasses in the burn barrel by his trailer. [Sweeney] also buried the gun in an ammunition can near his home, but at a later date retrieved the gun and had it in his possession for personal protection. [Sweeney] told the authorities that eventually the gun was seized from him in the State of Utah as a result of a routine traffic violation. At all times, [Sweeney] proclaimed his innocence.

On July 1, 1992, the police obtained a search warrant for [Sweeney's] property and located Guthrie's body in the area described by [Sweeney]. An autopsy was performed on the body on July 2, 1992, and the medical examiner positively identified the body as that of Daniel Guthrie. The examiner also retrieved the bullet that caused Guthrie's death. The bullet and the 9mm gun that was confiscated

from [Sweeney] by a Utah police officer [were] sent to the Bureau of Alcohol, Tobacco and Firearm Laboratory. The Bureau confirmed that the bullet that killed Guthrie had been fired from the 9mm gun belonging to [Sweeney].

On August 10, 1992, Judge Donahue in the Clark Circuit Court issued a warrant to arrest [Sweeney] for the murder of Guthrie. On October 8, 1992, upon the State's request, Judge Donahue issued a writ of habeas corpus ad prosequendum (a writ of habeas corpus ad prosequendum is referred to in this opinion as a "Writ") so that the State could obtain temporary custody of [Sweeney]. At that time, [Sweeney] was incarcerated in federal prison in Louisville, Kentucky and was scheduled to be sentenced that very same day by Judge Barker in the United States District Court for the Southern District of Indiana. [Sweeney] was transported to Clark County shortly after the Writ was issued. On October 22, 1992, [Sweeney] filed a Motion to Quash the Writ, and a hearing was held on the motion on November 10, 1992. The focus of the hearing concerned whether the State had jurisdiction over [Sweeney]. [Sweeney] argued that before he was sentenced in federal court, the State could have sought temporary custody of him through the use of the Writ, but once defendant was sentenced, the State was obligated to follow the procedures set forth in the Interstate Agreement on Detainers (referred to in this opinion as the "IAD"). In order to avoid conducting a trial and then having a higher court decide that the trial court had no jurisdiction over [Sweeney], Judge Donahue decided that the safer approach would be to return [Sweeney] to federal prison and proceed appropriately. Consequently, Judge Donahue granted [Sweeney's] motion and ordered that the Writ be held for naught and declared void.

On April 22, 1993, the State dismissed charges against [Sweeney], and [Sweeney] was sent back to federal prison in Kentucky. The State refiled charges on March 30, 1994. On August 1, 1994, upon the State's request, Judge Donahue granted another writ of habeas corpus ad prosequendum so that the State could obtain temporary custody of [Sweeney]. At this time, [Sweeney] was being held at the Federal Correctional Institution in Manchester, Kentucky. For the second time, [Sweeney] was transported to Clark County. In response, [Sweeney] filed a Motion to Quash the Writ on September 13, 1994, and on October 3, 1994, Judge Donahue held a hearing on this matter. Once again, [Sweeney] contended that the IAD was the exclusive

means of obtaining temporary custody of [Sweeney].  Additionally, [Sweeney] argued that the circumstances surrounding the issuance of both Writs were identical and that because the issue had been litigated, the doctrine of res judicata and collateral estoppel applied.  Judge Donahue denied [Sweeney's] Motion to Quash the Writ, relying on the fact that [Sweeney's] custody status had changed since the first Writ was issued.

A jury trial was conducted on November 14, 1995, and [Sweeney] was found guilty of the murder of Guthrie.  The trial court sentenced [Sweeney] to 60 years to be served upon the completion of his federal sentence of 210 months.

*Sweeney v. State*, 704 N.E.2d 86, 91-93 (Ind. 1998) (internal footnotes omitted).

[5]     Sweeney directly appealed to the Indiana Supreme Court, raising ten allegations of error, including a request for jail time credit, the reasonableness of his sentence, and an argument against the imposition of consecutive sentences.  Specifically, Sweeney contended:

> That the trial court erred in denying him credit for pretrial detention.  As discussed *supra*, [Sweeney] was serving a federal sentence when he was brought to Indiana to face pending criminal charges.  On two separate occasions, [Sweeney] was detained in the Clark County Jail before being convicted for the crime of Murder.  The trial court determined that because [Sweeney] was incarcerated for some other crime by some other court, he was not entitled to credit for the time served in Indiana.  We affirm the trial court's decision.
>
> Ind. Code § 35-50-6-3 (1988) established the credit time that may be earned by a defendant.  There are two criteria to consider in determining whether a defendant had a right to pretrial credit:  (1) pretrial confinement (2) which was a result of the criminal charge for which sentence is now imposed.
>
> The facts of this case are substantially similar to the facts in *Smith v. State*, 165 Ind. App. 37, 330 N.E.2d 384, 388 (Ind. Ct. App. 1975).  After being released on bail from state charges, defendant Smith was convicted for another crime and incarcerated in federal prison.  The

State of Indiana, pursuant to a Writ, obtained temporary custody of Smith from federal authorities. Smith argued that he should receive credit time for the period after Indiana assumed jurisdiction over him. The Court of Appeals denied pre-trial credit time because Smith's incarceration was "occasioned by his conviction in federal court, and not by reason of the charges in the case at bar." *Smith*, 330 N.E.2d at 388. Additionally, the court noted that the trial court's custody of defendant "was with the permission and on behalf of federal officials." *Id*. Similarly, [Sweeney] in this case was incarcerated as a result of his federal conviction and not due to the charges filed by the State of Indiana. For the same reason, we find that [Sweeney] should be denied pre-trial credit time.

*Id.* at 108-09 (some internal references omitted). The supreme court affirmed Sweeney's conviction and sentence in all respects. *See id*. at 112.

[6] On October 25, 2005, Sweeney filed a petition for post-conviction relief, which was amended on February 13, 2006. Therein Sweeney alleged, among other issues, that the State lacked jurisdiction to detain him and to move him across state lines. A hearing on his petition was conducted on April 16, 2007. On June 4, 2007, the post-conviction court denied his petition for post-conviction relief. *Sweeney v. State*, 886 N.E.2d 1, 6 (Ind. Ct. App. 2008). Sweeney appealed. This court affirmed the post-conviction court's ruling. With respect to Sweeney's jurisdictional argument, we noted as follows:

*Transport without Federal Officer*. Sweeney alleges that appellate counsel failed to ask that the Indiana Supreme Court apply Indiana Code section 35-38-3-2(d) and "correct his erroneous sentence." Sweeney alleges that he was transported from Kentucky by Indiana officials, in violation of Indiana Code section 35-33-10-5(2), which sets forth procedures for obtaining a writ of habeas corpus ad prosequendum and contemplates that the prisoner shall be "under the custody of a federal public servant." Sweeney postulates that this "stopped and

started" his federal sentence and he "cannot now be returned and compelled to serve the balance of [the Indiana] sentence."

> Sweeney did not present any testimony at the post-conviction hearing from which the post-conviction court could make a factual determination as to whether or not Clark County officials or State of Indiana officials were accompanied by a federal official when transporting Sweeney from Kentucky to Indiana. No statutory violation was established. Also, Sweeney does not present legal authority for the proposition that his Indiana sentence was "stopped" illegal, or subject to "correction" if challenged by appellate counsel.

*Id.* at 8 (internal references omitted).

[7] On September 26, 2013, Sweeney, pro se, filed a petition for modification of sentence and a motion for order of evaluation. The State filed an objection to both motions on October 2 and October 24, 2013, respectively. On June 18, 2014, Sweeney, pro se, filed a petition for jail time credit. That same day, the trial court conducted a conference by telephone, confirming that Sweeney was represented by counsel and ordering that only pleadings signed or co-signed by Sweeney's counsel would be accepted. Therefore, filings or pleadings signed only by Sweeney would be deemed denied and stricken.

[8] On August 4, 2014, the State filed its objection to Sweeney's petition for jail time credit. On August 11, 2014, the trial court denied Sweeney's motion for an evidentiary hearing, his motion for modification of sentence, and petition for jail time credit. On September 17, 2014, Sweeney, by counsel, filed a motion for jail time credit, arguing that his sentence for murder could not be served consecutively to his federal sentence and that the doctrine of *res judicata* is not

applicable to his claim for jail time credit. On September 25, 2014, the trial court summarily denied Sweeney's motion.

[9] On October 10, 2014, Sweeney, by counsel, filed a motion to renew motion for jail time credit, or in the alternative, a motion to correct error. The trial court denied Sweeney's motion to correct error on November 6, 2014.

[10] Sweeney now appeals. Additional facts will be provided as necessary.

## DISCUSSION AND DECISION

[11] Sweeney now contends that the trial court abused its discretion by denying his motion to correct error. Focusing on the underlying issues, Sweeney maintains that the trial court wrongly determined that he is not entitled to jail time credit. Because the doctrine of *res judicata* is inapplicable to claims for jail time credit, Sweeney asserts that he is entitled to an evidentiary hearing as he established a prima facie showing that he was escorted across state lines pursuant to the Writ by State of Indiana officials and not by the federal authorities, in violation of I.C. § 35-33-10-5(2).[1]

---

[1] Indiana Code section 35-33-10-5(2) provides:

When such a defendant is in federal custody as specified in subsection 1, a court in which the criminal action against such defendant is pending, may, upon application of the prosecuting attorney of such county, issue a certificate, known as a writ of habeas corpus ad prosequendum, addressed to the attorney general of the United States, certifying that such defendant has been charged by indictment or information filed against him in the specified court with the offense or offenses alleged therein, and that attendance of the defendant in such court for the purpose of criminal prosecution thereon is necessary in the interest of justice and requesting the attorney general of the United States to cause such defendant to be produced in such court, under custody of a federal public servant, upon a designated date and for a period of time necessary to complete the prosecution. Upon issuing such a certificate, the court may deliver it, or cause or authorize it to

[12] We review a trial court's ruling on a motion to correct error for an abuse of discretion. *Nichols v. State*, 947 N.E.2d 1011, 1015 (Ind. Ct. App. 2011). Where the issues presented upon appeal involve matters of law exclusively, we review the trial court's decision de novo. *Id.*

[13] Indiana Code section 35-50-6-3 sets forth in no uncertain terms that a person confined awaiting trial or sentencing is statutorily entitled to one day of credit for each day he is so confined; therefore, pre-sentence jail time credit is a matter of statutory right, not a matter of judicial discretion. *Weaver v. State*, 725 N.E.2d 945, 947-48 (Ind. Ct. App. 2000). A trial court's sentencing authority is only that which is conferred by the legislature, and it does not possess the power to impose sentences beyond the statutorily prescribed parameters. *Johnson v. State*, 654 N.E.2d 788, 790 (Ind. Ct. App. 1995). Indeed, a sentence that violates express statutory authority is facially defective. *See Lockhart v. State*, 671 N.E.2d 893, 904 (Ind. Ct. App. 1996). In light of these principles, we held in *Weaver* that "any time a defendant whose liberty has been restricted through imprisonment or confinement requests a trial court to reconsider its previous award of jail time credit, and the defendant's motion in this regard identifies a sufficient factual basis for its eligibility, the court must address the merits of such action." *Weaver*, 725 N.E.2d at 948. This is not to say that a trial court must address the merits of every pre-sentence jail time credit motion

be delivered, together with a certified copy of the indictment or information upon which it is based, to the attorney general of the United States or to his representative authorized to entertain the request.

filed by a defendant, but only those presenting a legitimate issue with respect to credit which are supported by the facts of the case and existing legal theories, thus triggering the need to reconsider an award of credit. *Id.* at 948 n.7. By way of illustration, a trial court may summarily deny a motion for pre-sentence jail time credit that provides no information or factual basis from which the court can determine whether credit time is or may be due; one that makes only bald assertions of error or entitlement to credit time; or one that advances a theory of eligibility not recognized by our existing case law interpreting Indiana Code section 35-50-6-3. *Id.*

[14] In his petition for jail time credit, Sweeney again maintains that because he was transported across state lines by Clark County Sheriff detectives, instead of by federal authorities as required by I.C. § 35-33-10-5(2), he was under the jurisdiction of the State of Indiana and should receive pre-trial credit time. As we noted *supra*, our supreme court considered and rejected this argument during Sweeney's direct appeal. *See Sweeney*, 704 N.E.2d at 109. A similar argument was raised during Sweeney's post-conviction proceedings, with the same result. *See Sweeney*, 886 N.E.2d at 6.

[15] While we agree with Sweeney that *res judicata* considerations are not at play with respect to pre-trial credit proceedings, we do not have to interminably address every petition. In this latest installment, Sweeney fails to advance new factual elements or legal theories. Rather, Sweeney repeats his speculative and unsupported statements that he was "illegally arrested and transported across State lines" after being "illegally released by an Inmate Systems Management

Officer." (Appellant's Br. p. 13). Accordingly, we cannot conclude that the trial court abused its discretion by summarily denying Sweeney's petition for jail time credit.

## CONCLUSION

Based on the foregoing, we conclude that the trial court properly denied Sweeney's petition for jail time credit.

Affirmed.

Bailey, J. and Barnes, J. concur