## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Feb 02 2016, 9:12 am

CLERK
of the supreme court,
court of appeals and
tax court

| ATTORNEYS FOR APPELLANT | ATTORNEYS FOR APPELLEE |
|---|---|
| Stephen T. Owens | Gregory F. Zoeller |
| Public Defender of Indiana | Attorney General of Indiana |
| Kevin R. Hewlate | Monika Prekopa Talbot |
| Deputy Public Defender | Deputy Attorney General |
| Indianapolis, Indiana | Indianapolis, Indiana |

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Raymond A. Warren, | February 2, 2016 |
| *Appellant-Defendant,* | Court of Appeals Cause No. 02A03-1508-PC-1053 |
| v. | Appeal from the Allen Superior Court |
| State of Indiana, | The Honorable John F. Surbeck, Jr., Judge |
| *Appellee-Plaintiff.* | Trial Court Cause No. 02D06-1205-PC-75 |

**Barnes, Judge.**

## Case Summary

Raymond Warren appeals the denial of his petition for post-conviction relief ("PCR petition"), which challenged his three convictions for Class A felony child molesting and one conviction for Class C felony child molesting. We affirm.

## Issues

Warren raises two issues, which we combine and restate as whether he received ineffective assistance of trial and appellate counsel with regard to failing to strike a certain juror for cause.

## Facts

On November 17, 2010, the State charged Warren with three counts of Class A felony child molesting and one count of Class C felony child molesting. During voir dire of prospective jurors for Warren's trial, the trial court removed two jurors for cause, one of whom reported having a child who had been molested and one of whom reported having been molested herself. During group examination of the prospective jurors by the trial court, the following exchange occurred:

> Q: Can you think of any reason what so ever that you might be unable or unwilling to listen to the testimony of the witnesses, arguments of the attorneys, information and advice given by way of instructions and thereafter reach a fair and impartial and just verdict based solely on the evidence and my instructions as to the law? Juror number 56?

JUROR NUMBER 56: As a mom, I'm not sure that I could be fair and impartial in this situation where a child has been molested. I'm just being honest.

Q: I appreciate that. How about if we just . . . we let that sit for a while and counsel have some questions and thank you for your candor.

Tr. pp. 21-22.

[4] The trial court then continued its group questioning of the jury pool, which included the following interactions:

Q: If you're selected to sit on this case will you be unable or unwilling to render a verdict solely on the evidence presented at trial and the law as I give it to you in my instructions disregarding any other ideas, notions or beliefs about the law that you may previously have encountered in reaching your verdict.

A: (no response or indication from any prospective juror.)

****

Q: Do any of you believe that the crimes charged in this case is one which you regard with such special contempt that you feel that any decision you would be required to make would be influenced by that contempt?

A: (no response or indication from any prospective juror.)

*****

Q: Do any of you have opinions or beliefs that you feel you cannot discard about the law applicable to the crime charged?

A: (no response or indication from any prospective juror.)

*Id.* at 24-25.

The prosecutor then began questioning the prospective jurors and directed the following to Juror Number 56:

Q: And juror in seat number 2, you had some concerns as a mother. Kind of that initial gut response that we talked about probably with the charges. What do you think. You kind of know your role here and your responsibility is to judge this case based on the evidence that you hear today and kind of put other things aside and make a decision based on those things. What do you think. Do you think you can do that or are you going to be back there thinking about other things?

JUROR NUMBER 56: I'm just not sure I'm going to be fair. And I believe that he deserves, he deserves fairness and I'm . . .

Q: Okay.

JUROR NUMBER 56: And if I see a child come in here and I'm going to be bawling, you know, I'm not going to be doing him any good.

Q: And I appreciate very much your candor and you know yourself obviously better than we can get to know you in a couple of minutes here so I appreciate your letting us know about that. . . .

[6]     *Id.* at 47.  The prosecutor then moved on to questioning other prospective jurors.

[7]     Defense counsel then began his questioning of the jury pool:

> Q:  Would you all promise me that you will decide the case based on the evidence and as much as possible set aside what these allegations are.  I mean, that's fair isn't it?
>
> A:  (no response or indication from any prospective juror.)
>
> Q:  . . . .  You indicated that you might have difficulty in being fair and impartial.  And could you explain that difficulty.  You don't have to get into facts, just explain your attitude a little bit.
>
> JUROR NUMBER 56:  I didn't have a perfect upbringing but I had a pretty good upbringing, very receptive parents, loving, affectionate.  Then I was blessed with two children.  I have a seventeen year old son and I have a daughter who just turned fifteen.  And there is so much on TV that I try not to even watch, a lot of news or read paper because right now I just don't want to read it.  I don't want to hear about it.  I guess I want to live in my perfect little world.
>
> Q:  And here you are.
>
> A:  And here I am.
>
> Q:  Actually its folks like you that we would both want here. You don't have an axe to grind and you'll sit and listen to the evidence, so you might be stuck.  Then again you might not be. But getting back to the fair and impartial, do you believe that

Raymond has a right to a fair trial, a hearing and then a determination by the jury?

A: I think everyone has.

Q: Everyone, okay. Everyone has that right. Most criminal cases are decided by guilty plea. Does that fact that Mr. Warren, Raymond, has elected to have a trial, will you hold that against him at all? Because you've got to be here?

A: Oh absolutely not.

Q: Alright. Okay. Thank you. . . .

*Id.* at 53-54. Defense counsel had no further interaction with Juror Number 56.

[8]   After questioning of the jury pool was complete, the trial court, prosecutor, and defense counsel had the following discussion:

Court: Okay. Alright, so want to take 2 for cause. [Apparently referring to Juror Number 56 who was seated in seat 2.]

[Defense counsel]: This is not, you already dismissed her.

Court: Oh, so we still have 56?

[Defense counsel]: Yeah. I had her for cause but you discussed cause already.

Court: Yeah okay, I understand. Defendant strikes juror number 60 in seat 4. 49 in seat 9 and 36 in seat 12. And accept the balance?

[Defense counsel]:  Yes.

Court:  And State strikes number 101 in seat 5, 49 in seat 9 and number 92 in seat 10.  And 20 in seat 3.  Alright, so we're going to keep 56 in seat 2, right?  Everybody settled on that?

[Prosecutor]:  Yes.

Court:  You okay with that [defense counsel]?

[Defense counsel]:  I thought you struck her for cause.

Court:  108.

[Defense counsel]:  Yeah, okay, but not 56.

Court:  No.  She's the one who says she doesn't know if she can be fair.  I know you both talked to her but I just want to be sure that we're all on the right track.  We're all where we want to be.

[Defense counsel]:  Yeah.

Court:  Okay.

*Id.* at 66-67.  As indicated, Juror Number 56 was seated on the jury.

[9]     After trial, Warren was convicted as charged.  He then appealed, represented by trial counsel, and raised two arguments:  whether the trial court erred in admitting certain evidence and whether there was sufficient evidence to support

his convictions. We rejected Warren's arguments and affirmed. *Warren v. State*, No. 02A03-1106-CR-325 (Ind. Ct. App. Mar. 14, 2012).

[10] Warren subsequently filed a PCR petition. In it, he alleged that he received ineffective assistance of both trial and appellate counsel related to the seating of Juror Number 56. Warren's trial and appellate counsel testified at the PCR hearing. Counsel stated that he has tried "many, many child molestation cases . . . ." PCR Tr. p. 6. Counsel explained his thought process regarding Juror Number 56 as follows:

> A:    Well, as I recall it's very difficult in a Child Molestation jury selection to get people to be honest. They either want to be on the jury, which you really have to watch, or they don't want to be on the jury and state that they're prejudice [sic] against the charge itself. What I thought I was getting in that juror was someone who would reflect upon the situation, and call into question some of her preconceived beliefs.
>
> Q:    Okay. Now she did not actually express any preconceived belief like Mr. Warren was probably guilty 'cause he was charged with that offense or anything like that?
>
> A:    No, but I think when you look at the transcript it's the typical situation, my goodness gracious, it's a Child Molestation case and there's a child here, and it would just be so difficult for me to serve.
>
> Q:    Okay. So aside from that concern about whether she could be fair, did you detect any indication of anything that would prevent or substantially impair her performance of duties as a juror?

A: Again, the thing I was impressed most by her was her candor as Judge Surbeck was. It appeared to me as though she would give me her honest effort because I really thought that we had a good shot at Mr. Warren's case.

*Id.* at 8-9. Counsel also agreed that his decision not to challenge Juror Number 56 "was based more on your instincts and your gut more than what she was saying[.]" *Id.* at 10.

[11] The PCR court denied Warren's petition. Warren now appeals.

# Analysis

[12] A petition seeking post-conviction relief bears the burden of establishing entitlement to relief by a preponderance of the evidence. *Hollowell v. State*, 19 N.E.3d 263, 268-69 (Ind. 2014). A petitioner appealing the denial of a PCR petition is appealing from a negative judgment. *Id.* at 269. "To prevail on appeal from the denial of post-conviction relief, a petitioner must show that the evidence as a whole leads unerringly and unmistakably to a conclusion opposite that reached by the post-conviction court." *Id.* The PCR court also entered findings of fact and conclusions of law as required by Indiana Post-Conviction Rule 1(6). We will not defer to the post-conviction court's legal conclusions. *Id.* However, we will reverse a denial of post-conviction relief only if there is a showing of clear error, or error that "'leaves us with a definite and firm conviction that a mistake has been made.'" *Id.* (quoting *Ben-Yisrayl v. State*, 729 N.E.2d 102, 106 (Ind. 2000), *cert. denied*).

[13]     We first address Warren's claim that he received ineffective assistance of trial counsel for not moving to strike Juror Number 56. "We analyze such claims under the two-part test announced in *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052 (1984)." *Ward v. State*, 969 N.E.2d 46, 51 (Ind. 2012). Under that test, a defendant "must show (1) that counsel's performance was deficient based on prevailing professional norms; and (2) that the deficient performance prejudiced the defense." *Id.* (citing *Strickland*, 466 U.S. at 687, 104 S. Ct. at 2064). Regarding the performance prong, we accord deference to counsel's strategic and tactical decisions and strongly presume that counsel rendered adequate assistance and exercised reasonable professional judgment in all significant decision-making. *Id.* As for the second prong, deficient performance is prejudicial if "'there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.'" *Id.* (quoting *Strickland*, 466 U.S. at 694, 104 S. Ct. at 2068).

[14]     "The right to a fair trial before an impartial jury is a cornerstone of our criminal justice system." *Whiting v. State*, 969 N.E.2d 24, 28 (Ind. 2012). This right requires that a defendant be given "'a fair trial by a panel of impartial, "indifferent" jurors.'" *Id.* (quoting *Irvin v. Dowd*, 366 U.S. 717, 722, 81 S. Ct. 1639, 1642 (1961)). "[A] constitutionally impartial juror is one who is able and willing to lay aside his or her prior knowledge and opinions, follow the law as instructed by the trial judge, and render a verdict based solely on the evidence presented in court." *Id.* "The presence of even one biased juror on the jury is a structural error requiring a new trial." *Id.*

[15] Defense counsel undoubtedly plays a vital role in enforcing the constitutional right to an impartial jury. However, whether to challenge a particular juror generally is a matter of trial tactics. *Marsillett v. State*, 495 N.E.2d 699, 706 (Ind. 1986). Parties and trial courts are privy to a number of nonrecord factors in assessing a potential juror's impartiality that cannot be easily reviewed by appellate courts, such as "'the prospective juror's inflection, sincerity, demeanor, candor, body language, and apprehension of duty.'" *Whiting*, 969 N.E.2d at 31 (quoting *Skilling v. United States*, 561 U.S. 358, 386, 130 S. Ct. 2896, 2918 (2010)).

[16] The primary case upon which Warren relies is *Hughes v. United States*, 258 F.3d 453 (6th Cir. 2001). In *Hughes*, a prospective juror in a federal theft and illegal firearm possession case told the district court during voir dire that she had a relative and a couple of acquaintances who worked in law enforcement, and that she did not think she could be a fair juror. The juror did not make any response to several subsequent questions by the district court to the jury pool as a whole regarding their ability to be impartial and fair. Neither the district court nor defense counsel further questioned the juror individually, and defense counsel did not move to strike her, despite a request from the defendant that he do so.

[17] On appeal of denial of habeas corpus after conviction, the Sixth Circuit held that defense counsel's failure to strike the juror constituted ineffective assistance of counsel. The court acknowledged, "A juror's express doubt as to her own impartiality on voir dire does not necessarily entail a finding of actual bias."

*Hughes*, 258 F.3d at 458. However, the court found that there was a "conspicuous lack of response, by both counsel and the trial judge, to [the juror's] clear declaration that she did not think she could be a fair juror." *Id.* Because "key elements of juror rehabilitation and juror assurances of impartiality" were absent in the case, the court found the juror to have been actually biased based on her statements to the district court. *Id.* at 459-60. Moreover, the court held that the district court's collective questions to the jury pool, to which the juror failed to respond, was insufficient to rehabilitate the juror or to provide sufficient evidence of her impartiality. *Id.* at 461. Finally, the court held that there can be no possible "strategic" reason for allowing an actually-biased juror to be seated and such an error is necessarily prejudicial, and so concluded that the defendant had received ineffective assistance of trial counsel. *Id.* at 463.

[18] We acknowledge some similarities between this case and *Hughes*.[1] However, we emphasize that we are reviewing the performance of Warren's attorney; the question before is not directly presented as to whether *Hughes* should control here. *See Woodson v. State*, 961 N.E.2d 1035, 1044 (Ind. Ct. App. 2012), *trans. denied*. In analyzing the performance of counsel, we must consider the legal precedent available to counsel at the time of trial, direct appeal, or both; counsel will not be deemed ineffective for not anticipating or initiating changes in the

---

[1] The State failed to address *Hughes* in its brief.

law. *Id.* (quoting *Sweeney v. State*, 886 N.E.2d 1, 8 (Ind. Ct. App. 2008), *trans. denied*). And, we note that decisions of federal circuit courts of appeal are not binding on Indiana courts. *Jackson v. State*, 830 N.E.2d 920, 921 (Ind. Ct. App. 2005), *trans. denied*. No Indiana case has ever cited *Hughes*. It is not abundantly clear that counsel for Warren was obligated to discover *Hughes* and argue its application in Indiana, either during trial or on direct appeal.

[19] Under established Indiana law, we cannot say Warren's counsel performed unreasonably in declining to strike Juror Number 56. Counsel, who has extensive experience trying child molestation cases, explained a particular dilemma of trying such cases: "They either want to be on the jury, which you really have to watch, or they don't want to be on the jury and state that they're prejudice [sic] against the charge itself." PCR Tr. p. 8. In other words, child molesting is a heinous offense and it can be difficult to find impartial jurors in such a case. Prospective jurors who appear too eager to serve on a child molestation jury may have ulterior motives for doing so, or conversely may believe he or she can avoid jury duty by stating his or her understandable prejudice against the charge.

[20] Counsel also explained that he reached a "gut" decision that Juror Number 56 could be fair and impartial because of her "candor." *Id.* at 9, 10. As recognized by both the United States and Indiana Supreme Courts, parties are able to gain a first-hand impression of prospective jurors that cannot be reflected in a cold record on appeal. *See Whiting*, 969 N.E.2d at 31 (quoting *Skilling*, 561 U.S. at 386, 130 S. Ct. at 2918). Counsel and the trial court both had personal

interaction with Juror Number 56 and both believed she could be fair and impartial. We cannot second-guess that determination.

[21] As far as any comparison with *Hughes*, the most crucial difference is the extensive testimony from counsel describing his experience and thought process behind keeping Juror Number 56. There is no mention of any such testimony from counsel in *Hughes*. This insight into counsel's reasonable tactical thinking was lacking in *Hughes* and supports the conclusion that Warren's counsel was not ineffective. *See McCullough v. State*, 973 N.E.2d 62, 85 (Ind. Ct. App. 2012) (holding trial counsel's failure to call certain witness was explained at PCR hearing testimony as being contrary to chosen defense strategy), *trans. denied*.

[22] It is possible that counsel could have questioned Juror Number 56 more extensively to examine her ability to be a fair and impartial juror. Indeed, it would have been preferable if, after expressing reservations about her ability to be fair and impartial, Juror Number 56 had been individually asked by the trial court or counsel if she could nevertheless follow the court's instructions and render a fair verdict based solely on the evidence. However, the fact that more *could* have been done does not mean that it *had* to be done. *See Wisehart v. State*, 693 N.E.2d 23, 46 (Ind. 1998) (holding, "While we agree that trial counsel could have probed some of the jurors in more depth to discover their ability to be fair and impartial jurors, we do not find such failure to be deficient performance."), *cert. denied*. Although Juror Number 56 expressed some reservations about her ability to serve impartially, she never unequivocally expressed that she could *not* be fair and impartial. She did not respond to

several group questions regarding impartiality, and indicated that she "absolutely" would not hold Warren's choice to have a jury trial against him. Trial Tr. p. 54. Counsel observed Juror Number 56 up close and interacted with her and gauged that she was a candid person who would be a good juror. We conclude that counsel's decision not to strike Juror Number 56 or challenge her for cause fell within the broad range of reasonable trial tactics and, therefore, Warren did not receive ineffective assistance of trial counsel.

[23] Warren's claim with respect to appellate counsel is essentially identical to his trial counsel claim. "Ineffective assistance of appellate counsel claims generally fall into three basic categories: (1) denial of access to an appeal; (2) waiver of issues; and (3) failure to present issues well." *Reed v. State*, 856 N.E.2d 1189, 1195 (Ind. 2006). Warren's argument is premised upon the failure to raise the jury selection issue on direct appeal. To support such an argument, a defendant must prove (1) the unraised issues are significant and obvious from the face of the record and (2) the unraised issues are "clearly stronger" than the raised issues. *Id.* Ineffective assistance is very rarely found in cases such as this because the decision of what issues to raise is one of the most important strategic decisions to be made by appellate counsel. *Id.* at 1196. We have already analyzed Warren's claims regarding Juror Number 56 and *Hughes*. The same reasoning leads us to conclude appellate counsel was not ineffective for electing not to raise this issue on direct appeal as opposed or in addition to the two issues he did raise.

# Conclusion

[24] The PCR court properly concluded that Warren did not receive ineffective assistance of trial or appellate counsel. We affirm the denial of the PCR petition.

[25] Affirmed.

Robb, J., and Altice, J., concur.